DETROIT BOARD OF EDUCATION v DETROIT FEDERATION OF
TEACHERS

1. LABOR RELATIONS—PUBLIC EMPLOYEES—UNFAIR LABOR PRACTICES—
    EMPLOYMENT RELATIONS COMMISSION—JURISDICTION—STATUTES.
    Exclusive jurisdiction over all unfair labor practices under a
    statute regulating strikes by public employees has been given
    to the Michigan Employment Relations Commission (MCLA
    423.216).

2. LABOR RELATIONS—PUBLIC EMPLOYEES—STRIKES—UNFAIR LABOR
    PRACTICES—EMPLOYMENT RELATIONS COMMISSION—JURISDICTION
    —STATUTES.
    A "strike" as defined in the statute regulating strikes by public
    employees is not necessarily an unfair labor practice, and thus
    a strike by public employees is not subject to the exclusive
    jurisdiction of the Michigan Employment Relations Commis-
    sion; extending jurisdiction by implication is appropriate only
    when absolutely necessary (MCLA 423.201, 423.210).

3. COURTS—STATUTES—PUBLIC EMPLOYEES—STRIKES—CONSTRUCTION—
    INJUNCTION.
    The Court of Appeals must strive to construe statutes consist-
    ently and will uphold the historic power of courts to enjoin
    strikes by public employees in the absence of specific language
    to the contrary.

4. CONTEMPT—BURDEN OF PROOF—STANDARD OF PROOF.
    The burden of proof in a civil contempt proceeding for violation
    of an injunction rests upon the party charging the violation,
    and the standard of proof is more stringent than the usual
    preponderance test applied in other civil actions; the power to
    punish is to be applied only when the contempt is clearly and
    unequivocally shown.

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 48 Am Jur 2d, Labor and Labor Relations §§ 1191, 1196.
    Public employees labor law: right of public employees to strike or
    engage in work stoppage. 37 ALR3d 1147.
[3] 48 Am Jur 2d, Labor and Labor Relations §§ 1197, 1407, 1471.
[4, 5] 48 Am Jur 2d, Labor and Labor Relations §§ 1525 *et seq.,* 1535.

5. CONTEMPT—EVIDENCE—SUFFICIENCY OF EVIDENCE.

> A trial court's finding that the officers of a striking teachers union were in contempt of an injunction which required them to hold a meeting and to there recommend and actively urge the members to return to work, was not supported by sufficient evidence where such a meeting was in fact held and the uncontroverted evidence presented was that at that meeting the union president told the members to return to work; she was not required to be enthusiastic about it, she was not required to persist in the face of shouts and threats, and she was not required to succeed in ending the strike.

Appeal from Wayne, Thomas J. Foley, J. Submitted Division 1 June 6, 1974, at Detroit. (Docket No. 18675.) Decided September 12, 1974.

Complaint by the Detroit Board of Education against the Detroit Federation of Teachers, Local 231 of the American Federation of Teachers and AFL-CIO, and its officers, for an injunction. The injunction was granted, and subsequently the defendant Detroit Federation of Teachers and three of its officers were found guilty of contempt. Defendants appeal. Reversed.

*Riley & Roumell,* for plaintiff.

*Marston, Sachs, O'Connell, Nunn & Freid, P. C.,* for defendants.

Before: BRONSON, P. J., and V. J. BRENNAN and VAN VALKENBURG,* JJ.

BRONSON, P. J. A teachers' strike began in the City of Detroit on September 4, 1973, the day the school year was to commence. That same day plaintiff-appellee, Detroit Board of Education (hereinafter DBE), applied to the Wayne County

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

Circuit Court to have the strike enjoined. On September 7, 1973, this request was dropped voluntarily by the DBE. On September 18, 1973, a petition for writ of mandamus was filed by interested parties seeking to force the DBE to reactivate its injunction suit.

Upon issuance of the writ, the DBE requested that its suit be reinstituted. On September 21, 1973, Circuit Judge Thomas J. Foley issued a show-cause order to defendant-appellant Detroit Federation of Teachers (hereinafter DFT) and certain named union officers. After a lengthy hearing, Judge Foley signed an order for a mandatory injunction on September 25, 1973. He found that the teachers were public employees within the meaning of MCLA 423.201 *et seq.;* MSA 17.455(1) *et seq.,* and further found that the teachers were on strike in violation of MCLA 423.201; MSA 17.455(1) and MCLA 423.202; MSA 17.455(2).

The injunction provided, in pertinent part, as follows:

"(1) That the officers of the Detroit Federation of Teachers Local 231 of the American Federation of Teachers and AFL-CIO, a voluntary unincorporated association, shall call a membership meeting of local 231 of the American Federation of Teachers and AFL-CIO forthwith.

"(2) That the officers of said federation and all the defendants shall at such meeting recommend and actively urge that the members of the Detroit Federation of Teachers Local 231 of the American Federation of Teachers and AFL-CIO return to their employment forthwith.

"(3) That the members of the Detroit Federation of Teachers Local 231 of the American Federation of Teachers and AFL-CIO return to their employment in the Detroit school system forthwith."

On September 27, 1973, the judge issued an

order for posting the injunction on the main school doors of each school in the system to effectuate service of process on the individual union members. Service had been made on the defendant union officials on September 26, 1973.

On September 28, 1973, the trial judge issued, at the request of the DBE, an order requiring the DFT and its officers to show cause why they should not be held in contempt of court for failure to obey the injunction. The alleged violations of the injunction were stated in the prayer for relief as follows:

"5. That defendants herein well knowing the premises but wholly disregarding the said injunction order of this court in that:

"(a) The Detroit Federation of Teachers and its officers have failed to call a membership meeting of said federation;

"(b) The Detroit Federation of Teachers and its officers have failed to recommend and actively urge said federation's members to return to their employment forthwith,

"in contempt of the aforementioned injunctive order of this honorable court."

Fines were sought as sanctions to compel obedience. Service was made on the named defendants on September 29, 1973.

Hearings lasted from October 1 to October 4, 1973. The trial judge found that defendant DFT and three defendant officers had failed to recommend and actively urge that members return to work. He specifically did not find that the defendants had violated that portion of the order requiring them to call a membership meeting. Fines and damages were imposed on each defendant found guilty of contempt in amounts and under conditions not relevant to the present case.

In post-judgment proceedings, defendants-appellants moved, *inter alia,* for a new trial. The motion was denied by an order dated October 31, 1973. This appeal followed.

It is important at the outset to recognize that we are here not deciding whether the teachers' strike was illegal. Nor are we deciding whether the injunction was proper.

We reach and decide only two issues, which may be stated as follows:

I. Was the injunction, and the findings of contempt resulting from its violation, void for lack of subject-matter jurisdiction?

II. Was there sufficient evidence to support the findings of contempt?

## I.

The Michigan Employment Relations Commission (MERC) has been given exclusive jurisdiction over all unfair labor practices. MCLA 423.216; MSA 17.455(16). See *Labor Mediation Board v Jackson County Road Commissioners,* 365 Mich 645; 114 NW2d 183 (1962).

DFT asserts that, by virtue of a recent amendment,[1] a strike is now to be considered an unfair labor practice. If that claim is valid, the conclusion sought—that MERC has exclusive jurisdiction—follows inexorably.

Reliance for the minor premise is placed on MCLA 423.210(3)(c); MSA 17.455(10)(3)(c), which now provides in pertinent part:

"(3) It shall be unlawful for a labor organization or its agents * * * (c) to refuse to bargain collectively with a public employer * * * ."

---

[1] *See* 1973 PA 25 amending MCLA 423.210; MSA 17.455(10).

A "strike" is defined in MCLA 423.201; MSA 17.455(1) as "the concerted failure to report for duty, the wilful absence from one's position, the stoppage of work, or the abstinence in whole or in part from the full, faithful and proper performance of the duties of employment, for the purpose of inducing, influencing or coercing a change in the conditions, or compensation, or the rights, privileges or obligations of employment".

This broad definition of "strike" is said to include failure to bargain in good faith, since good faith bargaining is one of the "duties of employment". Therefore, concludes DFT, a strike is an unfair labor practice, furnishing MERC with exclusive jurisdiction.

This reasoning is faulty on both logical and policy grounds. First, to say that a failure to bargain in good faith might constitute a strike for purposes of the definition of the latter term in MCLA 423.201; MSA 17.455(1) is *not* to say that every strike is an unfair labor practice. It is surely possible that a union could both bargain in good faith and still strike.

Moreover, the term "strike" is conspicuously absent from the list of those labor practices defined in MCLA 423.210; MSA 17.455(10) as unfair. Extending jurisdiction, particularly exclusive jurisdiction, by implication is appropriate only when absolutely necessary. *Holland School District v Holland Education Association,* 380 Mich 314, 325; 157 NW2d 206 (1968).[2]

Finally, acceptance of appellant DFT's argument would render redundant the provisions of MCLA 423.202; MSA 17.455(2) which make public strikes

[2] *Compare Labor Mediation Board v Jackson County Road Commission, supra; Gaidamavice v Newago Board of County Road Commissioners,* 341 Mich 280; 67 NW2d 178 (1954); *Royal Oak School District v State Tenure Commission,* 367 Mich 689; 117 NW2d 181 (1962).

illegal. For if—as DFT claims—all strikes are unfair labor practices and thereby illegal anyway, a law making it illegal to strike would be unnecessary. We cannot ascribe such an anomalous result to the Legislature but must strive to construe statutes consistently. See *In re State Highway Commission,* 383 Mich 709; 178 NW2d 923 (1970).

For the above reasons, in the absence of specific language to the contrary, we uphold the historic power of courts to enjoin strikes by public employees. See *Holland, supra.* We hold that MERC does not have exclusive jurisdiction to resolve this labor dispute.

## II.

We now proceed to consider whether there was sufficient evidence to support the findings of contempt.

The burden of proof was on the appellee DBE to prove that the named defendants-appellants violated the injunction in the manner alleged. See *Thorlakson v Wells,* 207 NW2d 326, 329 (ND 1973); *Colley v Tatum,* 227 Ga 294; 180 SE2d 346 (1971); *United States Time Corp v GEM of Boston, Inc,* 345 Mass 279; 186 NE2d 920 (1963). The rule is particularly well stated in *Cohn v Kramer,* 136 F2d 293 (CA 6, 1943), as follows:

"In a civil contempt proceeding for violation of a decree, the respondent is entitled to opportunity to controvert the charges against him; and, when he denies the charges, the burden rests upon the petitioner to prove by evidence that the decree has been violated. If the facts alleged as violation are neither admitted nor proven, the respondent may not be adjudged in contempt. This is elementary law." (Citations omitted.) *Id.* at 295.

In addition, the standard of proof in contempt cases is more stringent than the usual preponderance test applied in other civil actions. The proper standard was enunciated in *People v Matish,* 384 Mich 568; 184 NW2d 915 (1971), as follows:

"The power to punish for contempt is awesome and carries with it the equally great responsibility to apply it judiciously and only when the contempt is *clearly and unequivocally shown."* (Emphasis supplied.) *Id.,* at 572.

The trial judge found that the DFT and three officers had failed to "recommend and actively urge" that union members return to work. The injunction required them to (1) call a meeting and (2) *at that meeting* "recommend and actively urge" members to return to work. The trial judge did not find that the defendants-appellants failed to call a meeting. He therefore must have concluded that the September 30, 1973 meeting satisfied the requirement that a "meeting" be called.[3] The scope of our review is thus narrowed to a consideration of whether there was sufficient evidence to find that the DFT and three officers failed at the September 30, 1973 meeting to recommend and actively urge that members return to work.

The only evidence of what occurred during that meeting came from the testimony of Mary Ellen Riordan, president of DFT and a named defendant. On direct examination she testified as follows:

"*Q.* What if anything did you say to the membership with respect to the court's orders?

\* \* \*

"*A.* I said that the judge stated in his order that

---

[3] Such a finding, when necessary to the decision, may be implied. *Cf. Clark v Apex Foundry,* 7 Mich App 684, 688; 153 NW2d 182 (1967).

there was irreparable injury that may have been done or may have been threatened by the strike; that there was reason to believe that it might continue, that I had been ordered to call a membership meeting, and that this was the first place and time that I could arrange for it; that I was ordered to tell to the members that all of them must return to work, and that I was so doing.

"*Q.* What next happened?

\* \* \*

"*A.* I was unable to continue at that point for some time because of the shouting from the people who were in the assembly. \* \* \* I stated that we were told that we could not be absent from the negotiating table, and that again I was ordered by the judge, and was complying with his orders, to tell them to go back to work. Again I was interrupted and could not continue talking."

She did not use the words "urge" or "recommend". As she explained on redirect:

"*A.* I told them that they were ordered by the court's order, and that I was instructed to order them, and was so doing, to go back to work. I didn't use the word order. I used some other word, I don't remember which one, because I don't order members to do things. I tell them what I think they should do upon occasion, but I don't use the word order, I order you to do anything."

And further:

"*Q.* Did you tell them they should go back to work?
"*A.* Yes, sir."

This testimony was uncontradicted.

There was no evidence whatsoever as to what anyone else said or did at the meeting. In particular the only witness to testify on that issue, Mrs. Riordan, said she couldn't recall what defendant Elliott or defendant Bannan had said to the group. Neither of the latter two defendants testified.

The only other evidence suggesting that anyone failed to recommend and actively urge members to return to work also came from Mrs. Riordan. There were "several thousand" banners and signs, of various sizes, shapes and colors affixed to the walls and rafters of the building in which the meeting was being held. These banners proclaimed the merits of the strike and attacked the DBE. They were prepared and affixed without the knowledge or the approval of Mrs. Riordan or the DFT officers. Mrs. Riordan admitted that she did not order them removed or taken down.

If the trial judge believed Mrs. Riordan's testimony, then there was no basis whatsoever for his finding. She testified that she told the members to return to work. She was required by the injunction to "recommend and actively urge" them to do so. She was not required to be enthusiastic about it. She was not required to persist in the face of shouts and threats. She was not required to succeed in ending the strike. Her testimony stands uncontradicted. It cannot support a clear and unequivocal finding that she did not urge members to return to work.

On the other hand, if her testimony was not believed, the only other evidence offered was the failure to order the banners removed. That fact, standing alone, cannot support a contempt citation. No matter how the credibility of Mrs. Riordan was resolved by the trial judge, the record fails to support the finding of contempt against her. This conclusion is even more compelling with respect to appellants Bannan, Elliott, and DFT, as to whom no relevant evidence at all was introduced.[4]

---

[4] Any suggestion that other evidence introduced by DBE—consisting of proof that defendants-appellants failed to use other means to carry out their duty to "recommend and actively urge" members to

Careful scrutiny of the record fails to reveal any other possible basis for the trial judge's finding that the defendants-appellants violated the injunction. Accordingly, the findings of contempt as to all defendants are reversed, and the trial court is directed to enter an order dismissing this action with prejudice.

Reversed. Costs to appellants.

All concurred.

---

return to work—demonstrates a violation of the injunction must be rejected. The injunction ordered that "urging" to take place at a meeting called for that purpose, not in any "hot-line" publication, over television or radio, or via posted signs or telephone relay.