ACORN BUILDING COMPONENTS, INC v LOCAL UNION NO 2194
OF THE INTERNATIONAL UNION, UNITED AUTOMOBILE,
AEROSPACE & AGRICULTURAL IMPLEMENT WORKERS OF
AMERICA, UAW

Docket No. 92772. Submitted October 6, 1987, at Lansing. Decided
November 3, 1987.

Local Union No. 2194 of the International Union, United Auto-
mobile, Aerospace and Agricultural Implement Workers of
America, UAW, commenced a strike against Acorn Building
Components, Inc., after the parties' collective bargaining agree-
ment expired. Acorn filed an unverified complaint against the
union and others in Branch Circuit Court seeking injunctive
relief and alleging that defendants engaged in various strike
activities which hindered plaintiff's business. The court, on
plaintiff's motion, issued an ex parte temporary restraining
order (TRO) on May 12, 1986. A hearing was set for May 14,
1986, to show cause why the TRO should not be made a prelimi-
nary injunctive order. On May 14, the parties agreed to extend
the TRO for fourteen days, while the court took under advise-
ment plaintiff's request that the TRO be made a preliminary
injunctive order and defendants' motion to quash the TRO and
dismiss the complaint. On May 16, 1986, plaintiff filed a peti-
tion for an order to show cause why defendants should not be
held in contempt for violating the TRO. Following the show
cause hearing, the court, Michael H. Cherry, J., held defen-
dants in contempt for violating the TRO and imposed a $2,500
fine on defendants with $2,000 to be suspended if no further
violations occurred in the next thirty days. The court also

REFERENCES

Am Jur 2d, Contempt §§ 95-99, 104 *et seq.*

Am Jur 2d, Injunctions §§ 10, 14, 28, 264, 271, 284, 300, 311, 317,
347.

Am Jur 2d, Labor and Labor Realtions §§ 2074 *et seq.*; 2179 *et seq.*

Right of injured party to award of compensatory damages or fine in
contempt proceedings. 85 ALR3d 895.

State power to enjoin picketing as affected by Federal Labor Rela-
tions Act—Supreme Court cases. 56 L Ed 2d 813.

Appealability of order granting, extending, or refusing to dissolve
temporary restraining order. 19 ALR3d 403.

converted the TRO into a preliminary injunction setting forth the conditions under which union picketing of plaintiff's business could be conducted. The court further ruled that a violation of the order by an individual would result in a $500 fine or a jail sentence of up to forty-five days; that on any day in which a violation occurred, the union would be fined $2,500; and that any union official in a leadership position found to instigate such violation would be put in jail for up to ninety days. Defendants appealed by leave granted.

The Court of Appeals *held:*

1. Both the TRO and the preliminary injunction were improperly ordered, because the plaintiff did not make a clearly persuasive showing that it would suffer imminent and irreparable injury beyond the power of the regularly constituted police authorities to control. Both orders must be vacated.

2. Defendants did not waive their objection to the propriety of the TRO by agreeing at the May 14, 1986, proceedings to an extension of the TRO for fourteen days.

3. The court's finding that defendants were in contempt was improper because the finding was not supported by competent evidence.

4. The sanctions imposed upon defendants for contempt were greatly in excess of that permitted by statute and should not have been entered.

5. The ex parte TRO, the preliminary injunction, and the orders holding defendants in contempt are all vacated.

Reversed.

1. MOTIONS AND ORDERS — TEMPORARY RESTRAINING ORDERS — NO-
   TICE — COURT RULES.

   A temporary restraining order granted without notice to the adverse party must describe the injury and state why it is irreparable and why the order was granted without notice (MCR 3.310[B][2]).

2. LABOR RELATIONS — PICKETING — INJUNCTIONS.

   A labor injunction regulating picketing cannot be issued unless there is a clearly persuasive showing that the plaintiff will suffer imminent and irreparable injury which is beyond the power of the regularly constituted police authorities to control.

3. LABOR RELATIONS — PICKETING — RESTRAINING ORDERS — INJUNC-
   TIONS — ECONOMIC INJURY.

   An economic injury can be remedied at law and therefore is not an irreparable injury which would justify the issuance of a

temporary restraining order or injunction regulating labor picketing.

4. CONTEMPT — BURDEN OF PROOF.

The standard of proof in contempt proceedings is more stringent than the usual preponderance test applied in other civil actions; contempt may be found only where it is clearly and unequivocally shown.

5. LABOR RELATIONS — UNIONS — AGENCY.

A local union may be found responsible for the acts of its agents and members only where there is union participation and union responsibility for acts which occurred.

6. CONTEMPT — FINES.

For a single act of contempt a court can impose a fine of not more than $250 (MCL 600.1715[1]; MSA 27A.1715[1]).

*Stevens & Hayes* (by *Ralph P. Stevens*), for plaintiff.

*Klimist, McKnight, Sale & McClow, P.C.* (by *Judith A. Sale*), for defendants.

Before: J. B. SULLIVAN, P.J., and HOOD and M. E. CLEMENTS,* JJ.

PER CURIAM. Defendants appeal by leave granted from a temporary restraining order granted May 12, 1986, and an order to show cause for contempt, an order of contempt, and a preliminary injunctive order ordering the union's strikers to refrain from interfering with plaintiff's business, issued May 16, 1986, by the Branch Circuit Court.

On April 22, 1986, defendant Local Union No. 2194 commenced a strike against plaintiff after the parties' collective bargaining agreement expired. Plaintiff thereupon filed an unverified complaint against defendants for injunctive relief, alleging that defendants engaged in various strike activi-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

ties which hindered plaintiff's business, including obstructing the entrances to plaintiff's facility, resisting efforts by police to disperse the picketers, and throwing eggs and rocks at plaintiff's buses and at individuals who attempted to cross the picket line. Plaintiff prayed that defendants be enjoined from such activities. Plaintiff also filed a motion for a temporary restraining order, along with an affidavit by plaintiff's vice-president. The motion stated that unless an ex parte temporary restraining order was issued, plaintiff would suffer "immediate, substantial, and irreparable injury as plaintiff [would] otherwise be unlawfully deprived of delivering a work force to its facilities causing stoppage of production and loss of clients and customers."

The court issued an ex parte temporary restraining order on May 12. The order stated that plaintiff would suffer immediate and irreparable injury to its business if the restraining order did not enter. The order continued:

> It is hereby ordered that the Defendants, Local Union #2194, of the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, UAW, Teresa Estlow and David M. Demott, their agents, employees, servants and attorneys, and those persons acting in concert or participation with them who received [sic] actual notice of this Order are hereby enjoined from any and all activity which hinders or prevents, by mass picketing, unlawful threats or force, the pursuit by the Plaintiff of its lawful work, from obstructing or interfering with entrance to or egress from the Plaintiff's premises and from obstructing or interfering with the free and uninterrupted use of the public roads, streets and highways adjacent to the Plaintiff's premises at the following locations and adjacent areas:
> 1. 42 Cole Street, Quincy, Michigan

2. 87 Taylor Street, Quincy, Michigan
3. Plaintiff's plant located in Coldwater, Michigan.

The order also set a hearing for May 14, 1986, to show cause why the ex parte temporary restraining order should not be made a preliminary injunctive order.

On May 14, 1986, the parties agreed to extend the temporary restraining order for fourteen days, while the court took under advisement plaintiff's request to make the temporary restraining order into a preliminary injunctive order and defendants' motion to quash the temporary restraining order and dismiss the complaint.

On May 16, 1986, plaintiff filed a petition for an order to show cause why defendants should not be held in contempt for violating the temporary restraining order. Attached to the petition were affidavits executed by Gary Chester, acting Police Chief for the City of Coldwater, and C. John Pollack, undersheriff of the Branch County Sheriff's Department. Testimony was taken at the show cause hearing, after which the court held defendants in contempt for violating the temporary restraining order. The court imposed a $2,500 fine on defendants, with $2,000 to be suspended if no further violations occurred within the next thirty days. The court then converted the temporary restraining order into a preliminary injunction, stating that there would be "unavoidable and extreme harm suffered by the entire community if there were not restrictions involved on the parties." The injunction provided that no more than five picketers could congregate at any of plaintiff's gates; that the five picketers must be at least thirty feet from the gate; that there could be no more than thirty picketers within half a mile of

each plant; that the picketers could not block or obstruct traffic; and that the picketers could not damage plaintiff's property or employees or threaten plaintiff's employees. The court further ruled that a violation of the order by an individual would result in a $500 fine or a jail sentence of up to forty-five days; that on any day in which a violation occurred, the union would be fined $2,500; and that any union official in a leadership position found to instigate such violation would be put in jail for up to ninety days.

On appeal, defendants first claim that the May 12, 1986, temporary restraining order was improperly granted because the requirements of MCR 3.310(B) were not met. Initially, we note that an argument may be made that this issue is moot, since the temporary restraining order expired by its own terms and has been superseded by the May 16 preliminary injunction. However, we find this issue important enough to warrant discussion and choose to address the merits. See *Robson v Grand Trunk Western R Co,* 5 Mich App 90, 99-100; 145 NW2d 846 (1966).

MCR 3.310(B)(1) permits a temporary restraining order to be granted without written or oral notice to the adverse party only if

(a) it clearly appears from specific facts shown by affidavit or by a verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant from the delay required to effect notice or from the risk that notice will itself precipitate adverse action before an order can be issued;

(b) the applicant's attorney certifies to the court in writing the efforts, if any, that have been made to give the notice and the reasons supporting the claim that notice should not be required; and

(c) a permanent record or memorandum is made

of any nonwritten evidence, argument, or other representations made in support of the application.

The complaint in the instant case was not verified as required by subsection (a). In addition, there were no facts in the affidavit filed with the complaint that suggested that plaintiff would suffer irreparable harm from the delay required to effect notice or that notice itself would precipitate additional harm. Finally, plaintiff's attorney did not certify to the court in writing the efforts to give notice and the reasons supporting the claim that notice should not be required.

MCR 3.310(B)(2)(b) requires that a temporary restraining order granted without notice must "describe the injury and state why it is irreparable and why the order was granted without notice." The temporary restraining order in the instant case did not describe the injury and state why it was irreparable; it said only that plaintiff would suffer immediate and irreparable injury to its business if a temporary restraining order did not enter. No mention at all was made of why the order was granted without notice.

Plaintiff argues that defendants have waived their objection to the propriety of the temporary restraining order by agreeing, at the May 14 proceedings, to an extension of the temporary restraining order for fourteen days. We do not find that the issue is waived. The court expressly stated that it was holding under advisement both plaintiff's motion for a preliminary injunction and defendants' motion to dissolve the temporary restraining order and dismiss the complaint. On May 16, two days after this agreement, the court heard and decided both plaintiff's and defendants' motions in addition to conducting the show cause

hearing for contempt. Therefore, the propriety of the temporary restraining order was still considered an issue at that time, and defendants should not be deemed to have waived their objections thereto.

Next, defendants claim that the May 12 temporary restraining order and May 16 preliminary injunctive order were improperly granted because there was no showing of imminent and irreparable injury which the police could not handle. The Michigan Supreme Court has held that a labor injunction regulating picketing cannot be issued unless there is a clearly persuasive showing that the plaintiff will suffer imminent and irreparable injury which is beyond the power of the regularly constituted police authorities to control. *Holland School Dist v Holland Education Ass'n,* 380 Mich 314; 157 NW2d 206 (1968); *Cross Co v UAW Local No 155 (AFL-CIO),* 371 Mich 184, 197; 123 NW2d 215 (1963). The Michigan Supreme Court has frequently cautioned against the issuance of labor injunctions. *Holland, supra; Cross, supra; Booth Broadcasting Co v American Federation of Television & Radio Artists,* 366 Mich 559; 115 NW2d 380 (1962); *Town & Country Motors, Inc v Local Union No 328,* 355 Mich 26; 94 NW2d 442 (1959).

In the instant case, at both the temporary restraining order and preliminary injunction stages, there was an insufficient showing of imminent and irreparable injury beyond the power of the regularly constituted police authority to control. In plaintiff's complaint for injunctive relief, the motion for an ex parte temporary restraining order, and the supporting affidavit, plaintiff alleged that defendants' representatives blocked entrances and threw eggs and rocks at vehicles. These documents did not say that local law enforcement officials were unable to maintain order, nor was a lack of

order illustrated. Additionally, plaintiff alleged that, unless an ex parte temporary restraining order was granted, it would suffer immediate and irreparable injury by being unlawfully deprived of delivering a work force to its facilities, causing stoppage of production and loss of clients. However, economic injuries are not irreparable, as they can be remedied at law. *Van Buren Public School Dist v Wayne Circuit Judge,* 61 Mich App 6; 232 NW2d 278 (1975). Two additional affidavits, filed in support of plaintiff's petition for contempt, stated no more than that approximately fifty persons picketed plaintiff's facilities and that the law enforcement officers had to move some of them, that litter was strewn on the driveway, that the company truck drove on the lawn to avoid the litter, and that the presence of law enforcement officers was necessary for the plaintiff's buses and trucks to enter the plaintiff's property. Each of the affiants did state that he believed that it would "not be possible to maintain this extensive police involvement for extended periods of time in that such involvement cause [sic] almost a total and complete use of city police and sheriffs deputies then on duty." Despite this latter statement in the affidavits, the testimony of the local law enforcement officers in their affidavits and at the May 16 hearing does not show that the situation was beyond their power to control. Rather, it shows that the Branch County sheriff's office and the Coldwater police were fully able to deal with any illegal strike activity. They were able to effectively clear the way for vehicles to exit and enter the company's premises. They did so without making any arrests and without asking for any warrants to be issued. Because the *Cross* standards were not met, both the temporary restraining order and the preliminary injunction were improperly ordered. Thus, both orders must be vacated.

In addition, we agree with defendants that the order of contempt was improper, as it was not supported by competent evidence. The burden of proof was on plaintiff to establish that defendants violated the temporary restraining order. *Detroit Bd of Ed v Detroit Federation of Teachers,* 55 Mich App 499; 223 NW2d 23 (1974), lv den 394 Mich 807 (1975). The standard of proof in contempt proceedings is more stringent than the usual preponderance test applied in other civil actions; contempt may be found only where it is clearly and unequivocally shown. *Id.* at 506. The court in the instant case found defendants local union, Estlow, and DeMott jointly in violation of the temporary restraining order. As to the two named defendants, there was no "clear and unequivocal" showing of contempt. The petition and supporting affidavits make no reference to any action by the named defendants. At the May 16 hearing, the only reference to any local union representative was made by Undersheriff Pollack, who testified that he had told defendant Estlow that she had done a fine job on the picket line that day and that he had seen and heard her read the terms of the temporary restraining order to the strikers. Estlow testified that she advised the strikers of the terms of the restraining order and also advised them to move out of the way when told to do so. No testimony was adduced demonstrating any violation of the temporary restraining order by Estlow. As to defendant DeMott, the record is totally silent.

Nor should defendant local union have been found in contempt. A local union may be found responsible for the acts of its agents and members. However, a union is not responsible for every act, but only for instances where there is "union participation and union responsibility for acts which

occurred . . . ." *Cross Co v UAW Local No 155 (AFL-CIO)*, 377 Mich 202, 225; 139 NW2d 694 (1966). In *Cross*, the Court upheld the finding of union liability where it had been specifically shown that individuals found in contempt were officials of the union. In the instant case, it was not shown that union officials were involved in a violation. In fact, no specific names were mentioned and it was not even shown that the violators were members of the union.

We also agree with defendants that the sanctions imposed upon defendants for contempt violated MCL 600.1715(1); MSA 27A.1715(1). This statute states:

> Except as otherwise provided by law, punishment for contempt may be a fine of not more than $250.00, or imprisonment which, except in those cases where the commitment is for the omission to perform an act or duty which is still within the power of the person to perform shall not exceed 30 days, or both, in the discretion of the court.

For a single act of contempt a court can impose a fine of no more than $250 on a defendant. *City of Ann Arbor v Danish News Co*, 139 Mich App 218; 361 NW2d 772 (1984), lv den 424 Mich 863 (1985). In the instant case, the court, upon the finding of a single act of contempt, imposed a fine of $2,500. This amount greatly exceeded the express amount permitted.

Plaintiff argues that since fifty strikers were alleged to have blocked ingress and egress to the plant, a fine of $2,500 was not excessive as it could be divided among all fifty. This argument is without merit. The fine was imposed upon the two individual defendants and the local union, not upon individual union members. Plaintiff alternatively argues that since the trial judge suspended

$2,000 if no further violations occurred within thirty days, the $500 fine actually imposed did not exceed the limit. This argument is also without merit. The fact that the trial court suspended the fine on a good behavior provision does not remedy the fact that the fine imposed was excessive and should not have been entered.

Since we vacate the ex parte temporary restraining order and the preliminary injunction, as well as the orders holding defendants in contempt, we need not address the issue whether defendants were denied due process because they received insufficient notice of the show cause hearing.

Reversed.