DAVIES v DEPARTMENT OF TREASURY

Docket No. 146815. Submitted March 5, 1992, at Lansing. Decided
December 28, 1992; approved for publication April 22, 1993, at
9:00 A.M.

Beverly Davies and other former employees of the Tax Fraud
Division of the Department of Treasury brought an action in
the Ingham Circuit Court against the department and their
union, Michigan State Employees Association, alleging that
their discharge as part of a department-wide layoff made neces-
sary by budgetary constraints was unlawfully discriminatory
under the Civil Rights Act, MCL 37.2101 *et seq.*; MSA
3.548(101) *et seq.* The plaintiffs also sought an injunction com-
pelling the department to reinstate them. The court, James R.
Giddings, J., granted a preliminary injunction ordering rein-
statement. The Court of Appeals granted the department leave
to appeal and a stay of proceedings in the trial court.

The Court of Appeals *held:*

Whether a preliminary injunction should issue in a case
involving discharge from the civil service is determined by a
four-factor analysis: whether the public interest will be harmed
if an injunction issues; whether the harm to the applicant in
the absence of a stay outweighs the harm to the opposing party
if a stay is granted; whether there has been an adequate
demonstration that the applicant is likely to prevail on the
merits; and whether there has been an adequate demonstration
that the applicant will suffer irreparable injury if a prelimi-
nary injunction is not granted.

In this case, the four factors militate against a grant of a
preliminary injunction for the plaintiffs' reinstatement pending
trial.

Reversed and remanded for further proceedings.

*Green & Green* (by *Christine A. Green*), for the
plaintiffs.

*Frank J. Kelley,* Attorney General, *Thomas L.
Casey,* Solicitor General, and *Gary P. Gordon* and

*Leo H. Friedman,* Assistant Attorneys General, for Department of Treasury.

Before: MARILYN KELLY, P.J., and McDONALD and G. S. ALLEN,* JJ.

PER CURIAM. Defendant Michigan Department of Treasury appeals by leave granted from a December 2, 1991, order of the Ingham Circuit Court enjoining the department from continuing its November 9, 1991, layoff of regulatory agents in its Tax Fraud Division. The layoff was the result of the current fiscal crisis in state government, which has led to reduction of expenditures, elimination of programs, and layoff of employees in order to meet limited appropriations. On December 9, 1991, this Court granted the department's applications for leave to appeal and for a stay of proceedings.

Plaintiffs are twelve of the forty-four employees laid off after the department abolished eighty-three positions. Of the forty-four employees laid off, fourteen were regulatory agents in the Tax Fraud Division. Twelve of the regulatory agents are the plaintiffs in the instant case. Ten of the twelve are either female, black, or handicapped, or have Spanish surnames. All twelve are members of the Michigan State Employees Association (MSEA), and as such are subject to the terms of a collective bargaining agreement between the MSEA and the department. Pursuant to the terms of the collective bargaining agreement, individuals in the division may not "bump" less senior employees outside the division in the event of layoff.

Plaintiffs' complaint seeking immediate reinstatement to their former positions asserts that the layoff violated the Civil Rights Act, MCL 37.2101 *et seq.*; MSA 3.548(101) *et seq.*

---

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

Plaintiffs note that approximately eighty-six percent of the employees laid off in the Tax Fraud Division are protected group members (twelve out of fourteen), while only sixty percent of department employees in other units are protected group members. They also claim that, because of the "no-bump" rule, the layoff had a disparate effect on Tax Fraud Division employees.

However, the issue in the instant case is not whether the layoff constitutes a violation of the Civil Rights Act. That question will be answered after a full trial on the merits. Rather, the issue before us is whether the trial court abused its discretion in ordering plaintiffs reinstated to their jobs pending a final decision on the merits.

Whether a preliminary injunction should issue in a case involving discharge from the Civil Service is determined by a four-factor analysis: harm to the public interest if an injunction issues; whether harm to the applicant in the absence of a stay outweighs the harm to the opposing party if a stay is granted; the strength of the applicant's demonstration that the applicant is likely to prevail on the merits; and demonstration that the applicant will suffer irreparable injury if a preliminary injunction is not granted. *MSEA v Dep't of Mental Health,* 421 Mich 152, 157-158; 365 NW2d 93 (1984). In *MSEA,* our Supreme Court addressed the requisite showing of "irreparable injury necessary to support an injunction." The Court concluded that the plaintiff had not suffered the irreparable injury required even though her verified complaint alleged that she was the sole provider for her child, had no savings, was without means of supporting herself, and if terminated from her job was unlikely to find employment elsewhere as a nurse. *Id.,* 167-168.

Likewise, in *Employment Security Comm v Pow-*

*ell,* 141 Mich App 644, 649; 367 NW2d 435 (1985), this Court held that a discharged state employee failed to establish the requisite irreparable injury even though he testified that he was the sole provider for the three minor children living with him, that he had no savings, that the loss of his job meant the loss of health and medical benefits for him and his family, as well as the loss of income, and that he was three months in arrears on a land contract for the purchase of the family residence.

In the instant case, plaintiffs allege less irreparable harm than that found insufficient in the above-cited cases. Here, only three plaintiffs submitted affidavits detailing their damages. One plaintiff stated that she would be unable to pay a mortgage, another stated that she would be unable to continue counseling for her child, and the third averred that she would have to move in with her parents. These are all economic injuries that, though serious, do not justify an injunction because they can always be remedied by damages at law pending a decision on the merits of the complaint filed. *Acorn Bldg Components, Inc v UAW Local 2194,* 164 Mich App 358, 366; 416 NW2d 442 (1987).

However, plaintiffs also argue that the strong showing of irreparable harm required by Michigan case law is not required where, as here, the case involves a violation of the Civil Rights Act. According to plaintiffs, irreparable harm may be presumed where there is a substantial likelihood that constitutional and statutorily granted civil rights have been violated. Plaintiffs further argue, and the respected trial judge agreed, that "a substantial likelihood" existed that plaintiffs would prevail on the merits because (a) the no-bump rule had a disparate effect upon protected individuals

in the Tax Fraud Division, and (b) the department had failed to produce any evidence that the no-bump rule was justified. We disagree in each instance.

We know of no case law, and plaintiffs have cited none, holding that the strong showing of irreparable harm mandated by our Supreme Court in *MSEA, supra,* is not required in an action under the Civil Rights Act. A federal decision suggests the contrary. *Lafler v Athletic Bd of Control,* 536 F Supp 104 (WD Mich, 1982). There, the plaintiff sought injunctive relief in Ingham County under the federal and state constitutions, as well as the Civil Rights Act, to compel the Athletic Board of Control to allow her to enter a Golden Gloves boxing competition. After the Ingham Circuit Court issued the requested injunction, the matter was removed to federal district court, where the injunction was dissolved on the ground that the plaintiff had failed to show irreparable injury. At no point did the federal court rule or even suggest that because the plaintiff was a protected person under the Civil Rights Act, a showing of irreparable harm was not required.[1]

We do not agree that plaintiffs in the instant case have demonstrated a substantial likelihood of success on the merits. Contrary to plaintiffs' allegations, we see no evidence that the Tax Fraud Division was singled out for job reductions. While that unit of the department had more minorities than other units, the reductions were spread across other units in the department. Eighty-three positions, not just fourteen, were abolished. Of the eighty-three positions abolished, forty-three were abolished by layoff. Moreover, we doubt whether

[1] In deciding whether to preserve the restraining order, Chief Judge Miles used the same four-factor standard set forth in *MSEA v Dep't of Mental Health, supra.*

plaintiffs can demonstrate disparate effect by relying on the operation of the no bump rule. Under the rule, which was part of the collective bargaining agreement, plaintiffs are prohibited from bumping employees outside their unit. In return, plaintiffs are insulated from being bumped by employees outside their unit. In effect, the rule is not only a no-bump, but a *no-being-bumped* rule. Plaintiffs may not receive the benefit of their bargain while repudiating the burden of the bargain under the guise of disparate effect.

Plaintiffs argue that the department has offered no justification for including the Tax Fraud Division in the proposed layoff. To the contrary, the affidavit of State Treasurer Douglas Roberts clearly states that upon reviewing the expenditure records for the previous three years, it was found that "the cost of operating the Tax Fraud Division was greater per dollar of revenue generated in each year than the tax audit and collection activities in the unit," and that he accordingly ordered a personnel reduction in the Tax Fraud Division. Plaintiffs continued to quarrel with the treasurer's arithmetic at oral argument on appeal. However, this is the type of dispute that properly should be resolved at trial rather than upon motion for a preliminary injunction.

Finally, at no point have plaintiffs contested the necessity of reducing expenditures in an amount sufficient to meet the sums appropriated in the budget. Therefore, assuming arguendo that this Court affirmed the order reinstating plaintiffs to their jobs, the department would necessarily be required to lay off other employees. Therefore, such an action on our part would be against the public interest.[2]

---

[2] Harm to the public interest if a temporary injunction issues is the

The order of the circuit court enjoining the department from continuing the November 9, 1991, layoff of plaintiffs is reversed, and the matter is remanded to the circuit court for trial on the merits. No costs are assessed, a public question being involved.

---

first prong of the four-factor analysis required under *MSEA v Dep't of Mental Health, supra,* 157.