BINDER PLUMBING AND HEATING, INC., Plaintiff-Appellee, v. PLUMBERS AND PIPEFITTERS LOCAL UNION No. 99 *et al.*, Defendants-Appellants.

Fourth District   No. 4—93—0544

Argued November 16, 1993.—Opinion filed December 16, 1993.

A. Lou Benassi (argued), of Benassi & Benassi, P.C., of Peoria, for appellants.

Michael R. Lied (argued), of Husch & Eppenberger, of Peoria, for appellee.

JUSTICE GREEN delivered the opinion of the court:

On May 25, 1993, plaintiff Binder Plumbing & Heating, Inc. (Binder), filed a verified complaint in the circuit court of McLean County against defendants Plumbers & Pipefitters Local Union No. 99 (Local 99), Rick Terven, its business agent, John Doe, and Richard Roe. The latter two persons were unknown members of Local 99 alleged to have committed certain improper acts. The complaint requested a temporary restraining order (TRO) and a preliminary injunction against defendant prohibiting misconduct during a labor dispute between the parties. On May 26, 1993, Local 99 and Terven appeared and filed a verified response to the complaint. Evidence was heard on that day and a TRO issued. After a further hearing, a preliminary injunction was issued on June 4, 1993.

Defendants have appealed the grant of the preliminary injunction. (134 Ill. 2d R. 307(a).) They maintain that the injunction (1) was overbroad, enjoining acts which had not been shown to have been committed or which were protected; (2) resulted from an abuse of discretion; (3) violated section 1 of the Labor Dispute Act (Act) (Ill. Rev. Stat. 1991, ch. 48, par. 2a); (4) violated Local 99's constitutional rights; and (5) failed to comply with section 11–101 of the Code of Civil Procedure (Code) (Ill. Rev. Stat. 1991, ch. 110, par. 11–101). We agree that the injunction was overbroad and vacate certain portions of it for that reason. We affirm the balance of the injunction.

The parties agree that Binder had entered into a contract with Illinois State University (ISU) to replace certain expansion joints and steam pipes running in "tunnels" under the ISU campus at Normal. They also agree that Binder employed entirely nonunion employees at this time. Local 99 maintained that Binder had agreed with it to use only union workers on the project and then fired all of its union members and hired persons who were nonunion. The dispute resulted in Local 99's picketing of the jobsite beginning on May 20, 1993.

Binder's complaint, which was filed May 25, 1993, alleged that in the process of picketing, Local 99's members had (1) thrown foreign substances on Binder's welding equipment; (2) blocked persons desiring to enter or leave the work site by massing in large numbers in

front of and around such persons; (3) threatened persons entering the work site with physical harm; and (4) shouting "threatening, obscene and derogatory statements at people" who wished to enter or leave the work premises and "threatened retaliation."

The evidence concerning the welder consisted of the testimony of Arthur Binder that, during the time of the picketing, he discovered an open five-pound bag of sugar which had been thrown on a welder at the site. The court could clearly believe Binder's testimony but the only way that the injury to the welder could be attributed to the members of Local 99 would be by way of an inference that they must have done it because they were picketing and had incentive to injure plaintiff. Such an inference has insufficient persuasive value, of itself, to justify issuance of a preliminary injunction. Similarly, testimony was presented from Timothy Rich, another Binder employee, that during the picketing he was working in a tunnel when electrical power to the trench was shut off. The theory that this evidence indicated the picketers were responsible for this is less persuasive than that concerning the sugar on the welder.

More significant was the testimony of Arthur Binder that on one of the mornings during the picketing at approximately 6 a.m. some 30 to 35 persons appearing to be picketers showed up at a gate and stood in front of the gate when he arrived there in a. pickup truck. According to Arthur Binder, when he sent an employee with him to unlock the gate the picketers would not let the employee up to the gate and they stated to the employee "[they] weren't going to work [that day]." Arthur Binder explained that he then had police summoned and the picketers then moved away from the gate but discovery was then made that the gate lock had been jammed. Because of the closeness of the pickets to the gate and the related circumstances, the court could have properly determined that the pickets were responsible for the gate being jammed.

Defendants concede that in determining whether to grant a preliminary injunction in a labor dispute, the circuit court is bound by the usual rules in regard to preliminary injunctions. In a reasonably recent case this court has described those requirements as follows:

> "A preliminary injunction is a provisional remedy granted to preserve the status quo pending a hearing on the merits. [Citations.] In order for a preliminary injunction to issue, the plaintiff must establish, by a preponderance of the evidence, that (1) he possesses a clearly ascertained right in need of protection; (2) he will suffer irreparable harm without the injunction; (3) there is no adequate remedy at law; and (4) he is likely to be

successful on the merits of his cause. [Citation.] An applicant for a preliminary injunction need not make out a case which will entitle him to the ultimate relief he seeks, but need only raise a fair question as to the existence of the right claimed, making it appear advisable that the positions of the parties should remain the same until the court has an opportunity to consider the case on its merits. ***

The decision to grant or deny a preliminary injunction rests within the sound discretion of the trial court and will not be disturbed absent a showing of abuse." *Cameron v. Bartels* (1991), 214 Ill. App. 3d 69, 73-74, 573 N.E.2d 273, 275-76.

See also *Lee/O'Keefe Insurance Agency, Inc. v. Ferega* (1987), 163 Ill. App. 3d 997, 1002-03, 516 N.E.2d 1313, 1317.

As we subsequently explain, we conclude that the foregoing evidence, considered in the light of the explanation in *Cameron*, justified the circuit court to preliminarily enjoin Local 99 from having more than three pickets at the entrance to the site and from certain conduct. Indeed, at oral argument, defendants indicated they had no objection to the limitation upon the number of pickets. All of this could have been accomplished by paragraphs 3, 4, and 7 of the injunction order which enjoined defendants from conduct as follows:

"3. Engaging, directing or procuring others to engage in mass picketing in the vicinity in which the employees of BINDER, its suppliers and shippers and their employees are required to work or perform their duties, or at or near the places of ingress or egress to or from the work site, or along the ways traveled by said persons in going thereto or coming therefrom, or by force, show of force, threats, jeers, vile or abusive language, violence or threats of violence, surveillance, telephone calls or by any similar acts, preventing or attempting to prevent any person from entering upon or continuing in his duties as such officer, employee, contractor, agent, guard or invitee at the work site; allowing, however, to the Defendants the right to engage in peaceful picketing or handbilling through the use of a specifically limited number of pickets not to exceed a total number of three (3), at the entrance of any work site.

4. Either singly or in combination with others, collecting, congregating, loitering, patrolling or gathering in or about the places of ingress or egress to and from the work site or any of the ways or approaches thereto, for the purpose of intimidating, threatening, coercing, or otherwise unlawfully persuading, inducing or causing any person to leave his employment, or

preventing any person from entering the employment of BINDER or from transacting business with BINDER;

\* \* \*

7. Entering or going upon the work site for any purpose without the express consent or authorization of the authorized representatives of BINDER or Illinois State University."

Paragraph 1 enjoined defendants from "interfering, hindering, or obstructing" Binder in "the free, uninterrupted and unhindered control and direction" of its operations at the site. Obviously, much prohibited activity by Local 99 might interfere, hinder or obstruct those operations. Paragraph 2 prohibited "congregating or loitering in the vicinity of the entrance" to the site for the purpose or effect of intimidating, harassing, injuring or disturbing any persons." Any prohibitions which were proper here are covered by paragraphs 3 and 4 and activity which might disturb Binder may well be an exercise of free speech. Paragraph 5 prohibits activity near the site which is for the purpose of "injuring or destroying the business of Binder." Again this paragraph could prohibit protected speech which might injure or destroy Binder.

Paragraph 6 of the injunction order prohibits defendants from the following:

"Either singly or in combination with others, calling upon any officers, employees, suppliers, shippers or invitees of BINDER, anywhere, and from accosting, obstructing or stopping any of them, anywhere, for the purpose of intimidating, threatening, coercing or otherwise unlawfully persuading, inducing or causing them or any of them to cease or refuse to perform their duties for BINDER."

Paragraph 8 prohibited "[m]enacing, assaulting, intimidating, threatening, harassing, or shouting vile or offensive epithets at persons employed by Binder, or persons going to and from the work site." Paragraphs 8 and 9 prohibited "[t]hreating, coercing, intimidating, harassing, or assaulting" employees or officers of Binder or those seeking employment with Binder. Paragraph 11 enjoined any person from "[a]dvising, encouraging, assisting or participating in any of the" prohibited activities. These prohibitions also concern activity which is either (1) already prohibited by paragraphs 3, 4, or 7; (2) not shown by evidence to have been committed; or (3) involve protected free speech.

We need not consider further the relief granted in paragraphs 1, 2, 5, 6, 8, 9, 10, and 11 of the order. We now turn to the question of whether the relief granted by paragraphs 3, 4, and 7 was proper.

The predominant interest of Binder which would be protected by paragraphs 3, 4, and 7 of the order was the right of ingress and egress from the work site. Decisions in *Ossey v. Retail Clerks' Union* (1927), 326 Ill. 405, 417, 158 N.E. 162, 166, and *Illinois Power Co. v. Latham* (1973), 15 Ill. App. 3d 156, 160, 303 N.E.2d 448, 452, make clear that a business entity has a protectable right to ingress and egress by its employees and others to and from sites where it is working. Although any violation of those rights here was not as severe as those which occurred in *Ossey* and *Latham*, the trial court could have concluded that on one day, for a period of approximately two hours, Local 99 members had obstructed a gate to the work site by gathering so close together that others could not pass, making at least one threat and damaging the gate.

While loss of two hours work time on a construction project is not very great, the court could have concluded that absent injunctive relief the union would continue to shut off access at the gate involved. Although the evidence indicated that the picketers refrained from blocking access when police arrived, Binder had no assurance that the blockage would not begin again when police left or if injunctive relief was denied. The amount of money which Binder would lose by improper shutting off of access would be difficult to calculate. Accordingly, a suit for monetary damages would not be an adequate remedy nor would any other remedy at law. In the case of *In re Marriage of Joerger* (1991), 221 Ill. App. 3d 400, 407, 581 N.E.2d 1219, 1225, this court emphasized the significance of the likelihood of subsequent violation of the right of a party in determining whether irreparable injury is present.

Accordingly, we hold that as far as the restraints of paragraphs 3, 4, and 7 of the order are concerned, the evidence supported a determination by the circuit court that (1) Binder had a clearly ascertainable right needing protection; (2) it would suffer irreparable harm without injunctive relief; (3) it had no adequate remedy at law; and (4) it was likely to succeed on the merits. *Cameron*, 214 Ill. App. 3d at 73-74, 573 N.E.2d at 275-76.

Defendants contend that permitting grant of injunctive relief, even to the extent we have allowed it, is violative of the precedent set forth in *Sadat v. American Motors Corp.* (1984), 104 Ill. 2d 105, 470 N.E.2d 997, *Bettendorf-Stanford Bakery Equipment Co. v. International Union of United Automobile, Aerospace & Agricultural Implement Workers of America, U A W: Local Union No. 1906* (1977), 49 Ill. App. 3d 20, 363 N.E.2d 867, and *Acorn Building Components v. U A W Local 2194* (1987), 164 Mich. App. 358, 416 N.W.2d 442, 128

L.R.R.M. 2289. *Sadat* held that to obtain an injunction against conduct violative of a statute which does not provide for injunction, the traditional requirements must be shown. *Bettendorf-Stanford* concerned the proof then required to get injunctive relief without notice to the party to be enjoined.

In *Acorn*, an injunction which limited picketing was set aside when, as here, the evidence showed that the improper picketing ceased when police arrived. *Acorn* is directly in point here but is not binding on courts of this State. We do not agree with that holding and do not follow it because, as we have indicated, the illegal stoppage of ingress and egress would be likely to start again after police leave.

Section 1 of the Act, upon which Local 99 relies in part, states:

"No restraining order or injunction shall be granted by any court of this State in any case involving or growing out of a dispute concerning terms or conditions of employment, enjoining or restraining any person or persons, either singly or in concert, from terminating any relation of employment or from ceasing to perform any work or labor, *or from peaceably and without threats or intimidation* recommending, advising, or persuading others so to do; *or from peaceably and without threats or intimidation* being upon any public street, or thoroughfare or highway for the purpose of obtaining or communicating information, or *to peaceably and without threats or intimidation* persuade any person or persons to work or to abstain from working, or to employ or to *peaceably and without threats or intimidation cease* to employ any party to a labor dispute, or to recommend, advise, or persuade others so to do." (Emphasis added.) Ill. Rev. Stat. 1991, ch. 48, par. 2a.

Defendants assert that all conduct of the picketers conformed to the requirements of section 1 and should not have been enjoined. However, as we have indicated, under the evidence the circuit court could have found that those picketing intentionally blocked an entrance to the work site and jammed the gate. That conduct was not protected by section 1 of the Act, and that and closely related conduct is all that is prohibited by the portions of the preliminary injunction which we uphold.

The instant case differs from *Yellow Cab Co. v. Production Workers Union of Chicago & Vicinity, Local 707* (1980), 92 Ill. App. 3d 355, 358, 416 N.E.2d 48, 51, where a good deal of violence occurred at the site of picketing but the circuit court found that those acts were not shown to be acts of the agents of the union. The appellate court affirmed the denial of injunctive relief. Here, the trier of fact

could have found that the members of Local 99 did engage in illegal picketing to the extent we have discussed and such a determination is supported by the evidence.

Defendants' contention that issuing an injunction here violated their constitutional rights follows much the same line as that in regard to section 1 of the Act. We recognize that injunctive relief is an extraordinary remedy. (*Caudill v. Beil* (1984), 127 Ill. App. 3d 847, 853, 469 N.E.2d 257, 262.) We also recognize that because of the free speech rights which are being exercised by protesters in a labor dispute, isolated acts of coercion or violence do not justify injunctive relief. (*Milk Wagon Drivers Union of Chicago, Local 753 v. Meadowmoor Dairies, Inc.* (1941), 312 U.S. 287, 295, 85 L. Ed. 836, 842, 61 S. Ct. 552, 555.) However, we do not deem conduct which shuts down a construction project for two hours to be trivial. The portion of the injunction which we permit to remain merely prohibits a repeat of that conduct and does not prevent a wide exercise of free speech. That portion of the injunction involves no constitutional right.

Section 11—101 of the Code states, in part, as follows:

> "Every order granting an injunction and every restraining order *shall set forth the reasons for its entry*; shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained[.]" (Emphasis added.) (Ill. Rev. Stat. 1991, ch. 110, par. 11—101.)

Here, the order for injunction gave no reasons for its issuance. In *S.T. Enterprises, Inc. v. Brunswick Corp.* (1974), 57 Ill. 2d 461, 475, 315 N.E.2d 1, 8-9, the supreme court reversed an order for injunction which made no finding of irreparable injury to the party seeking relief. The court stated that because of the lack of finding "no equitable basis [was] presented for modification" of the order. (57 Ill. 2d at 475.) However, in *Cameron* this court found no reversible error when the injunction involved there contained no reasons for its issuance. There, the opponent to the injunction had approved the *form* of the order. Here, defendants' counsel did not approve the form of the order but had an opportunity to view it and did not raise any objection to the lack of reasons shown. We recognize that in *Hoda v. Hoda* (1970), 122 Ill. App. 2d 283, 289, 258 N.E.2d 386, 389, the Second District Appellate Court held that failure to give reasons for issuance of an injunctive order was reversible error. Under the circumstances here, and in view of the precedent of *Cameron*, we find no reversible error resulted from the form of the order. The defense did not seem

to be prejudiced by lack of understanding of the court's reasons for ruling.

Defendants have rightfully complained of the overbreadth of the injunctive order. We conclude that we have cured its overbreadth by the portions we will vacate.

Accordingly, we vacate paragraphs 1, 2, 5, 6, 8, 9, 10, and 11 of the order of preliminary injunction. We affirm the balance of that order.

Affirmed in part; vacated in part.

KNECHT and COOK, JJ., concur.