J-A09034-15

2015 PA Super 257

| TURNER CONSTRUCTION, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| PLUMBERS LOCAL 690 AND MICHAEL BRADLEY AND STEAMFITTERS LOCAL 420 AND ANTHONY GALLAGHER AND SPRINKLER FITTERS LOCAL 692 AND WAYNE MILLER AND INTERNATIONAL ASSOCIATION OF HEAT AND FROST INSULATORS AND ALLIED WORKERS LOCAL 14 AND STEPHEN F. PETTIT AND JOHN DOE | |
| APPEAL OF: PLUMBERS LOCAL 690 AND MICHAEL BRADLEY, | |
| Appellants | No. 2421 EDA 2014 |

Appeal from the Order Entered July 18, 2014
In the Court of Common Pleas of Montgomery County
Civil Division at No(s): 2014-08797

| TURNER CONSTRUCTION, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| PLUMBERS LOCAL 690 AND MICHAEL BRADLEY AND STEAMFITTERS LOCAL 420 AND ANTHONY GALLAGHER AND SPRINKLER FITTERS LOCAL 692 AND WAYNE MILLER AND INTERNATIONAL ASSOCIATION OF HEAT AND FROST INSULATORS AND ALLIED WORKERS LOCAL 14 AND STEPHEN F. PETTIT AND JOHN DOE, | |
| APPEAL OF: SPRINKLER FITTERS LOCAL 692 AND WAYNE MILLER, | |

J-A09034-15

Appeal from the Order Entered July 18, 2014
In the Court of Common Pleas of Montgomery County
Civil Division at No(s): 2014-08797

TURNER CONSTRUCTION,

        Appellee

        v.

PLUMBERS LOCAL 690 AND MICHAEL BRADLEY AND STEAMFITTERS LOCAL 420 AND ANTHONY GALLAGHER AND SPRINKLER FITTERS LOCAL 692 AND WAYNE MILLER AND INTERNATIONAL ASSOCIATION OF HEAT AND FROST INSULATORS AND ALLIED WORKERS LOCAL 14 AND STEPHEN F. PETTIT AND JOHN DOE,

APPEAL OF: INTERNATIONAL ASSOCIATION OF HEAT AND FROST INSULATORS AND ALLIED WORKERS, LOCAL 14 AND STEPHEN F. PETIT,

IN THE SUPERIOR COURT OF PENNSYLVANIA

        Appellants | No. 2574 EDA 2014

Appeal from the Order Entered July 18, 2014
In the Court of Common Pleas of Montgomery County
Civil Division at No(s): 2014-08797

BEFORE:  BOWES, DONOHUE, AND LAZARUS, JJ.

OPINION BY BOWES, J.:  **FILED DECEMBER 14, 2015**

Plumbers Local 690, Michael Bradley, Sprinkler Fitters Local 692, Wayne Miller, International Association of Heat and Frost Insulators and

- 2 -

Allied Workers Local 14, and Stephen F. Pettit[1] (unless otherwise noted, hereinafter referred to collectively as "Appellants") appeal from the July 18, 2014 preliminary injunction that restricted their picketing activity at a construction site managed by Turner Construction Co. ("Turner").[2] Appellants, members of a Philadelphia-area trades association,[3] share the legal position that the preliminary injunction violates the Labor Anti-Injunction Act, 43 P.S. §§ 206a-206r (sometimes referred to herein as the "Act"). We affirm in part, reverse in part, and remand for further proceedings.

The following facts are relevant to our review. Turner is managing the construction of a medical facility operated by Children's Hospital of Philadelphia ("CHOP") and located at 401 North Gulph Road in Upper Merion

---

[1] Michael Bradley, Anthony Gallagher, Wayne Miller, and Stephen F. Pettit were the respective business managers for the trade unions listed in the caption when the injunction was issued. Unless specifically identified in the body of this writing, our references to each union subsumes the business manager who is associated with that organization.

[2] Although listed in the caption, Steamfitters Local 420 and Anthony Gallagher did not appeal the July 18, 2014 preliminary injunction.

[3] Appellants are among several unions that comprise the Philadelphia Building & Construction Trades Council. According to that association's website, "The [council] provides essential coordination and support to the work of its affiliated local unions in order that, through inter-trade solidarity, organized construction workers achieve a powerful voice in government, in bargaining, and in their communities." *See* http://philadelphiabuildingtrades.com/about/.

Township, Pennsylvania. Throughout the project, Turner engaged both union and nonunion contractors to perform various construction work. No labor dispute existed between Turner and any of its employees or contractors.[4] Instead, the instant dispute arose between Turner and Plumbers Local 690 due to the company's decision to utilize a non-union plumbing contractor, Worth & Company ("Worth"), on the CHOP construction project. Specifically, on April 21, 2014, in response to Turner's subcontract with Worth, members of Plumbers Local 690 and other unidentified individuals initiated picket lines at the CHOP construction site.[5] The trial court described the April 21, 2014 rally as follows:

> The picketers engaged in a variety of activities in protest of Worth & Company's employment by Turner. Some of the

---

[4] In pertinent part, the Labor Anti-Injunction Act defines a "labor dispute" as "any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment or concerning employment relations or any other controversy arising out of the respective interests of employer and employe, **regardless** of whether or not the disputants stand in the proximate relation of employer and employe, and **regardless** of whether or not the employes are on strike with the employer." 43 P.S. § 206c(c) (emphases added).

[5] The esteemed dissent would find that the purpose of the April 21 rally was to assert Plumbers Local 690's objections to Worth's failure to abide by wage and labor standards rather than the contractor's use of nonunion workers. *See* Dissenting Opinion at 3. For the reasons explained in footnote thirteen on page seventeen, we do not believe that the dissent's narrow interpretation of Plumbers Local 690's objective accurately represents the nature of the protest at the CHOP construction site.

amassed picketers wore signs [that acknowledged Plumbers Union Local 690.] Others, about thirty individuals from the mass of picketers, assembled in front of the Construction Site's two entrances. The two groups stationed at the gates prevented workers, vehicles, and equipment from entering the Construction Site. Other picketers stood against the fence on the Construction Site, trespassing on the property. Protesters also inflated a union rat [(a symbol used to draw attention to a labor dispute)] near Gate B on the Construction Site itself, again, trespassing on the Construction Site.

The Turner management personnel on-site called the Upper Merion Township Police Department, which dispatched officers to the scene. Police requested that the picketers move to Gate B, and the picketers complied. Nevertheless, thirty picketers remained on the Construction Site and continued to mass in front of Gate B, blocking ingress and egress. Despite the presence of police officers, members of Local 690 and others continued trespassing on the Construction Site and blockading Gate B.

Trial Court Opinion, 10/9/14, 2-3 (footnote and citations to affidavits omitted).

Turner immediately filed a complaint in equity against Plumbers Local 690 and its business manager, Mr. Bradley, and the following day it petitioned for special relief seeking to enjoin Plumbers Local 690 from continuing to disrupt construction. The petition for special relief included a proposed order that established several restrictions on the picketing activities at the CHOP construction site. Asserting that aspects of the picketing, such as blocking ingress and egress to the site, amounted to a seizure, Turner explicitly invoked § 206d of the Act, set forth *infra*, as a basis to avoid the Act's prohibition on restraining orders and injunctions in

labor disputes. Plumbers Local 690 and its business manager, the only

parties involved at that stage of the dispute, conferred and settled the

matter without a hearing and stipulated to a special injunction[6] that adopted

the terms of Turner's proposed preliminary injunction, with some

modifications that are not relevant herein.[7]

_____

[6] While Pa.R.C.P. 1531 expressly recognizes special injunctions, the rule does not define the term or differentiate it from a preliminary injunction. Our Supreme Court has described a special injunction as one that "grants relief which is auxiliary to the main relief requested in the complaint." **Matter of Franklin Twp. Bd. of Sup'rs**, 379 A.2d 874, 879 (Pa. 1977). **See also**, 15 Standard Pennsylvania Practice 2d § 83:11 (footnoted omitted ("A special injunction, like a preliminary injunction, is commonly sought to preserve the *status quo* until the final hearing. A special injunction may be asked for during the pendency of an equity action, and it may be granted at any stage of the proceedings, whenever it is necessary to preserve the *status quo*.").

[7] The special injunction provided, in pertinent part, as follows:

> [I]t is hereby ORDERED, ADJUDGED, and DECREED as follows:
>
> 1. A Special Injunction be and hereby is issued without hearing, as provided under the Pennsylvania Rules of Civil Procedure.
>
> 2. Defendants, **together with their members, representatives, agents, servants, sympathizers, members and all others acting on their behalf or in concert with them**, be and hereby are ENJOINED and RESTRAINED FROM:
>
>> A. Preventing or attempting to prevent by blocking, obstructing, mass picketing, or coercion in any form any persons from entering onto or performing their work at

*(Footnote Continued Next Page)*

J-A09034-15

The resultant special injunction was entered on April 22, 2014. That order enjoined Plumbers Local 690 from trespassing on the construction site,

*(Footnote Continued)* _____

> the construction site at 401 North Gulph Road in Upper Merion Township (Construction Site or "CHOP Property);
>
> B.    Picketing on CHOP Property, which means using pickets, inflatable equipment, or other equipment or property, more than eight (8) feet in from the curb around 401 North Gulph Road in Upper Merion Township;
>
> C.    Except as provided below, all picketing at or within twenty-five (25) feet of any of the means of ingress or egress, gates, driveways, entrances, exits, or other means of access to the Construction Site;
>
> D.    Any assisting, aiding or abetting any person or persons who violate or attempt to violate this Order
>
> E.    Threatening, harassing, intimidating, following, or otherwise unlawfully interfering, either directly or indirectly, with any person, employee or vehicle entering or leaving the Construction Site;
>
> 3.    Pickets, including relief pickets, and **any other persons acting on behalf of or in concert with defendants**, shall be limited in number to 5 at any one time at the driveways to the Construction Site, provided said pickets shall conduct their activities consistently with Paragraph 2 above of this Order.
>
> 4.    Defendants and their officers shall make every reasonable effort to communicate the dictates of this Order to their representatives, agents; pickets, sympathizers, and members engaging in picketing and other activity at the Construction Site and **shall make every reasonable effort to cause** their agents, representatives, members and **those acting in concert with them, to comply with the dictates of this Order**.

Special Injunction, 4/22/14, at 2-3 (emphases added).

- 7 -

blocking access to the site, and preventing other contractors from performing their work on the project by obstruction, mass picketing, or coercion. Unlimited picketing was restricted to areas beyond eight feet from the curb and twenty-five feet from either of the two gates. Plumbers Local 690 and persons working in concert with it could have a maximum of five people at the construction gates. The special injunction also enjoined Plumbers Local 690, and "**all others acting on their behalf or in concert with them** [from blocking] any persons from entering onto or performing their work at the construction site[.]" Special Injunction, 4/22/14, at 2 (emphasis added). The plumbers union and other individuals acting in concert with it were enjoined from "[p]icketing on CHOP property, which mean[t] using pickets . . . more than eight (8) feet in from the curb around 401 North Gulph Road[.]" *Id*.

Additionally, the special injunction enjoined "all picketing at or within twenty-five (25) feet of any of the means of ingress or egress . . . or other means of access to the Construction Site [and] otherwise unlawfully interfering, either directly or indirectly, with any person, employee of vehicle entering or leaving the Construction Site[.]" *Id*. Plumbers Local 690 was also enjoined from "assisting, aiding or abetting any person or persons who violate or attempt to violate this Order[.]" *Id*. To protect against potential damages in the event Plumbers Local 690 was wrongfully enjoined, Turner submitted a $5,000 bond as security. Finally, the stipulated special

- 8 -

injunction stated that no hearing would be scheduled absent written request of either party.

The picketing on behalf of Plumbers Local 690 at the CHOP construction site continued without interruption throughout May and June 2014. N.T., 7/14/14, at 33. The composition of the picketers changed at different times and included members of Appellant labor unions involved herein, specifically Steamfitters Local 420, Sprinkler Fitters Local 692, and Heat and Frost Insulators Local 14. *Id*. at 26, 28. At times, the number of picketers exceeded the five-person limits at the gates outlined in the special injunction and the protestors engaged in prohibited activities such as harassing workers attempting to enter the site and impeding deliveries. *Id*. at 26, 33-34. Thus, notwithstanding its agreement, Plumbers Local 690 failed to ensure that others acting in concert with it complied with the dictates of the special injunction. Eventually, the Montgomery County Sheriff's Department read the April 2014 order to the picketers and posted a copy of the order on the perimeter fence surrounding the construction site. Trial Court Opinion, 10/9/14, at 4; Ricketts Aff. ¶ 9.

On July 9, 2014, a large-scale rally occurred at the CHOP construction site and is the genesis of the present appeal. Between 5:45 a.m. and 11:55 a.m. on that date, picketers amassed at the site, erected a tent within the eight-foot perimeter established in the special injunction, and gathered inside each of the two construction gates. The participants varied in

numbers during the course of the morning but, at its height, the rally included 181 people. The only two gates to the site were blocked. The Upper Merion Police Department and Montgomery County Sheriff's Department responded to the demonstration, but did not stop the picketers from continuing to block the ingress and egress at the two construction gates. The picketers prevented the delivery of materials and impeded the arrival of contractors scheduled to work that day. Hence, the blockade disrupted Turner's ability to perform work at the site until the demonstration ended.

On that same day, Turner received permission to file an amended complaint in equity at the original action number. It joined Sheet Metal Workers Local 19, Steamfitters Local 420, Sprinkler Fitters Local 692, the International Association of Heat and Frost Insulators Local 14, and each organization's respective business manager. The memorandum in support of its motion to amend the equity complaint and join the additional defendants asserted that:

> Plaintiff seeks to add these parties because they are now or have in the recent past engaged in the same illegal conduct as Defendant Plumbers Local 690 at the same construction site already at issue in this litigation. The addition of these parties to this case will permit efficient adjudication of all parties' rights. Plaintiff seeks to amend the complaint to aver occurrences relating to the additional parties that has [sic] happened after the filing of the original pleading.

Memorandum in Support of Motion For Leave of Court to Add Additional Parties and to Amend the Complaint, 7/9/14/ at 1-2.[8]

Turner also filed a second petition for special injunction that, again, invoked § 206d as a basis to avoid the application of the Act's preclusion of restraining orders and injunctions in labor disputes. Turner supported the petition for special injunction with (1) the affidavit of John D. Ricketts, Jr., project manager for the CHOP construction project, and (2) photographs illustrating the use of a blockade to impede the ingress and egress of traffic at the construction site.

During the ensuing evidentiary hearing, Mr. Ricketts described the events that he witnessed on the morning of July 9, 2014. He stated that picketers started to arrive at the construction site at approximately 5:30 a.m., totaled 181 at the zenith of the rally, and dispersed around noon following an address by Anthony Gallagher, the business manager for Steamfitters Local 420. N.T., 7/14/14, at 10-11, 26. He reported that large collections of picketers formed circles in each of the two twenty-five-feet-wide construction entrances. *Id*. at 11-12. The formation at Gate A, which Mr. Ricketts identified as the main construction gate, marched continually and refused to yield to vehicles attempting to enter. *Id*. at 12. Other

---

[8] Turner subsequently modified the complaint to withdraw the claims against Sheet Metal Workers Local 19 and the organization's business manager, Gary Masino. *See* N.T., 7/14/14, at 4-5.

picketers converged in the area along North Gulph Road located between the two entrances. *Id*. at 12. They erected tents, unloaded coolers, and blocked a lane of traffic. *Id*. at 10, 16.

Mr. Ricketts further testified that he witnessed protesters turn away vehicles from the construction gates. *Id*. at 12-13. Additionally, he identified several photographs, which were subsequently entered into evidence, that depicted the picket line blocking the ingress of vehicles at the construction site. Mr. Ricketts stated, "[T]he picketers did not move out of the way to allow the car[s] to enter. They would continue to walk in front of the vehicles as the cars would try to inch closer, but didn't break stride or move out of the way to allow vehicles to pass through." *Id*. at 18. He continued that the picketing activity prevented some tradesmen from getting to the construction site to perform their work. He explained, "Gate A is our union gate. We only had two . . . union contractors have manpower on-site that day[.]" *Id*. at 19. He specifically identified four contractors that had insufficient manpower and recounted that the foreman for a plaster contractor called him on the telephone to alert him to the fact that the picketers had blocked a delivery truck from the site and that the material had to be returned. *Id*. Mr. Ricketts noted that the picketing activity on

July 9, 2014, impacted Turner's productivity and limited the tasks that it could accomplish over a six-hour period that morning.[9]

In addition to the testimony regarding the blockade of the two construction entrances, Mr. Ricketts identified specific individuals associated with the respective trade unions who participated in the demonstration. In addition to Anthony Gallagher, Mr. Ricketts recognized Pat Doyle, who sits on the executive board of Sprinkler Fitters Local 692, from prior construction projects. *Id*. at 27. Similarly, he identified Steve Pettit, the business manager for the Heat and Frost Insulators Local 14, whom he had observed during the unions' prior onsite activities. These events included an episode where demonstrators blocked a delivery truck and harassed the driver. *Id*. at 28. Mr. Ricketts did not identify Michael Bradley or Wayne Miller as participants in the rally.

After hearing the foregoing evidence and listening to the parties' respective legal arguments, on July 18, 2014, the trial court issued a preliminary injunction. Significantly, as it relates to the instant appeal, the preliminary injunction extended the stipulated restrictions outlined in the

---

[9] Approximately fifteen minutes before the rally subsided, the blockade prevented a pump truck from a union concrete contractor from accessing the site through the proper gate. N.T., 7/14/14, at 42-43. While the truck eventually gained access to the construction site, it was forced to enter through the non-union gate. *Id*. at 43. Later that afternoon, after the participants disbursed, five more trucks entered the site and delivered concrete without incident. *Id*.

April 2014 order to the additional defendants who had not been parties to the original stipulation. The preliminary injunction also limited the aggregate number of picketers from all of the Appellant labor organizations to five individuals at any one time and removed the provision that permitted five pickets at the construction gates.

Appellants filed timely appeals, which this Court consolidated for argument and disposition. The trial court did not direct Appellants to file concise statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b); however, it authored a Rule 1925(a) opinion explaining its reasons for issuing the preliminary injunction.

Plumbers Local 690, Michael Bradley, Sprinkler Fitters Local 692, and Wayne Miller share legal representation and assert the following claims:

> A. Whether the Appellee presented sufficient evidence demonstrating the necessity of injunctive relief against the Appellant[s].
>
> B. Whether 43 [P.S.] § 206i required the lower court to issue findings of fact before granting the Appellee's request for a preliminary injunction.
>
> C. Whether the lower court's Order granting overly broad injunctive relief violates Section 206f of the Labor Anti-Injunction Act, 43 [P.S.] 206a *et seq*.
>
> D. Whether the count violated [s]ection 206h of the Labor Anti-Injunction Act, 43 [P.S.] 206a *et seq*., by granting a preliminary injunction against certain individual union officers.

Briefs of Plumbers Local 690 at 2 and Sprinkler Fitters Local 692 at 2.

The International Association of Heat and Frost Insulators and Allied

Workers Local 14 assert similar overlapping arguments as follows:

> [One.] [W]hether the trial court erred by finding that Appellants' conduct constituted a seizure under Section 206d of the Pennsylvania Labor Anti-Injunction Act, 43 [P.S] § 206a *et seq*.?
>
> [Two.] [W]hether the trial court erred by granting overly broad injunctive relief in violation of Section 206f of the Pennsylvania Labor Anti-Injunction Act, 43 [P.S.] § 206a *et seq*.?
>
> [Three.] [W]hether the trial court erred by failing to issue findings of fact in adherence to the strict jurisdictional requirements and substantive limitations of Section 206i of the Pennsylvania Labor Anti-Injunction Act, 43 [P.S.] § 206a *et seq*.?

International Association of Heat and Frost Insulators and Allied Workers

Local 14's brief at 4.[10]

As our Supreme Court stated in **Summit Towne Centre, Inc. v.**

**Shoe Show of Rocky Mount, Inc.,** 828 A.2d 995, 1000 (Pa. 2003),

"appellate courts review a trial court order refusing or granting a preliminary

injunction for an abuse of discretion." We disturb the trial court's decision

"only if it is plain that no grounds exist to support the decree or that the rule

of law relied upon was palpably erroneous or misapplied[.]" **Id**. (quoting

**Roberts v. Board of Dirs. of Sch. Dist.**, 341 A.2d 475, 478 (Pa. 1975)).

---

[10] Since issue "B" in the briefs submitted by Plumbers Local 690 and Sprinkler Fitter Local 692 coincides with the issues identified in the brief submitted by Heat and Frost Workers Local 14 as One and Three, we address those issues together *infra*. Similarly, we address collectively the issues identified as "C" and Two, respectively.

At the outset, we confront Plumbers Local 690's challenge to the sufficiency of the evidence supporting the trial court's determination that it was involved in the July 2014 rally that formed the basis of the preliminary injunction.[11] Pointing out that Turner failed to demonstrate that either Mr. Bradley, then-business-manager-now-president of Plumbers Local 690, or any of its members-at-large were at the demonstration, the union asserts that a conclusion that it participated in the unlawful conduct cannot be based on the collective guilt of the additional defendants. Plumbers Local 690 posits that Turner was required to adduce direct evidence to demonstrate that the harm flowing from the blockade was attributable to its specific conduct. In its written opinion, the trial court found no legal basis for Plumbers Local 690 to object to the terms of the July 18, 2014 preliminary injunction because the union previously consented to the terms of the April

_____

[11] Plumbers Local 690 relies upon § 206h of the Act in support of its assertion that Turner did not establish the plumbing union's participation by the weight of the evidence. However, as we discuss in the body of this opinion, since the record sustains the trial court's finding that a seizure occurred pursuant to § 206d(d), the strict requirements outlined in the Act are not applicable. **Westinghouse Elec. Corp. v. United Elec., Radio & Mach. Workers of Am. (CIO) Local 601,** 46 A.2d 16, 20 (Pa. 1946). Accordingly, Plumbers Local 690's reliance on the referenced section of the Act fails. Likewise, for the same reason, we reject both Sprinkler Fitters's attempt to invoke § 206h in relation to its business agent, Wayne Miller, and Heat and Frost Insulators Local 14's assertion that Appellants are entitled to attorney fees, costs, and expenses pursuant to § 206q of the Act.

2014 special injunction.[12]  ***See*** Trial Court Opinion, 10/9/14, at 13.  While we disagree with the trial court's rationale that the plumbers union forfeited its right to challenge the July injunction, we conclude that the evidence of record demonstrates that grounds exist to support the decree against Plumbers Local 690.

Stated plainly, we cannot ignore Plumbers Local 690's role in this case insofar as it failed to use reasonable efforts to prevent the other union locals working in concert with it to comply with the terms of the special injunction. Indeed, that organization's objections to the use of non-union plumbers on the CHOP construction project is the *sine qua non* of the instant labor dispute.  Plumbers Local 690 not only initiated the ongoing quarrel with Turner, but it also admitted to previously blocking the construction gates and stipulated to the April 2014 special injunction.[13]  While we recognize

_____

[12] Contrary to Turner's accusations that Plumbers Local 690 failed to preserve its legal arguments in their entirety, it is obvious that the organization did not waive any arguments below.  It participated in the evidentiary hearing and argued against the injunction.  Moreover, although the trial court did not order Appellants to file concise statements of errors complained of on appeal, the court addressed this challenge *sua sponte* in its Rule 1925(a) opinion and, as noted in the body of this writing, concluded that no relief was due.

[13] The dissent argues that Plumbers Local 690 communicated a message regarding wages and standards during the April rally that differed from the pro-union message that the additional defendants promoted during the demonstration on July 9, 2014.  However, it is the union standard for wages, conditions, and benefits that the nonunion employer ostensibly destroys by
*(Footnote Continued Next Page)*

that the evidentiary record does not specifically identify any member of Plumbers Local 690 among the 181 people who participated in the July 2014 rally, the facts bear out an inter-trade solidarity among Appellants to rally against Turner in derogation of the special injunction.

Specifically, Plumbers Local 690 consented to the terms of the special injunction that not only limited the size, scope, and location of its picketing activities, but also precluded the union local's sympathizers "and all others acting on their behalf or in concert with them" from engaging in the prohibited conduct.  *See* Special Injunction, 4/22/14, at 2.  Plumbers Local 690 agreed not to assist any person to violate the special injunction. Nevertheless, it failed to use reasonable efforts to prevent the additional

*(Footnote Continued)* _____

hiring workers to perform identical work for less.  Thus, whether styled as a picket against Turner and Worth due to the latter's nonunion wages and standards or as a protest against Turner and Worth because the latter employs nonunion workers at those lower wages and standards, both demonstrations were intended to impress upon Turner, Worth, and the public at large the ills of utilizing nonunion labor.

The dissent unintentionally acknowledges the unions' collective objective.  In her dissenting opinion, Judge Donohue notes, "the focus of the protest of July 9, was Turner's failure to hire all union labor."  Dissenting Opinion at 6.  Similarly, in criticizing our statement that Plumbers Local 690 initiated the ongoing quarrel with Turner at the CHOP construction site, the learned jurist subsequently observed, "from the perspective of all organized labor, Turner was the one that 'initiated the quarrel' by failing to hire union labor to complete all aspects of the job in question."  *Id*. at 7 n.3.  Thus, contrary to the dissent's characterizations, the messages communicated by the respective parties during the April 21 and July 9 rallies were one and the same: Turner should have utilized only union contractors on the CHOP construction project.

defendants from violating the terms of special injunction, which was posted at the site. As noted *supra*, approximately 181 people donned identical t-shirts, separated into groups, and seized the construction site by blocking the construction gates. The people who did not man the picket lines congregated near a tent stocked with coolers which the demonstrators had erected at the onset of the rally. The demonstration continued for six hours and the participants did not disband until the business manager for Steamfitters Local 420 addressed the rally collectively.

As the foregoing facts reveal a high degree of planning and coordination among various unions during the labor demonstration, logical inferences require that we view the rally for what it was: a public display of support for Plumbers Local 690 by its sympathizers. The opposite perspective leads to the absurd situation where the additional defendants, which Turner joined in order to prevent them from engaging in conduct which Plumbers Local 690 specifically agreed to forego, would have to abide by the preliminary injunction while Plumbers Local 690 would not be sanctioned for any illegal conduct defined by the special injunction. That result contradicts the intent of the special injunction's terms, which was to prevent Plumbers Local 690 and its sympathizers acting in concert from obstructing the construction process. Accordingly, we find sufficient grounds exist to conclude that Plumbers Local 690 aided, abetted, or failed to prevent in some manner the events that constituted a seizure of the CHOP

construction site on July 9, 2014. Had the trial court failed to include Plumbers Local 690 in the preliminary injunction, it would have created an untenable situation where all Plumbers Local 690 had to do in order to be absolved from responsibility for any illegal conduct was to absent itself from the construction site when such conduct occurred. Hence, the trial court did not err in imposing the terms of the preliminary injunction against Plumbers Local 690 and its officer. **See Summit Towne Centre**, **supra** at 1000 ("Only if it is plain that *no grounds* exist to support the decree . . . will we interfere with the decision of the trial court [to grant or deny a preliminary injunction].") (emphasis added).

Similarly, we reject Sprinkler Fitters Local 692's assertion that Turner did not establish its involvement in the rally. Notwithstanding its arguments to the contrary, the certified record in this case confirms that union local's direct involvement in the rally through the actions of Pat Doyle, whom Mr. Ricketts identified as a member of the Sprinkler Fitters Local 692 executive board. Mr. Ricketts observed Mr. Doyle greeting other picketers at Gate B. **See** N.T., 7/14/14, at 27-28. Thus, its participation was established.[14]

Next, we address Appellants' arguments concerning the application of the Labor Anti-Injunction Act, which generally restricts a trial court's

---

[14] Heat and Frost Insulators Local 14 does not challenge Turner's evidence regarding its participation in the rally.

jurisdiction to issue injunctive relief during labor disputes unless a specific exception to the prohibitions apply. This argument, which we address in two parts, subsumes the issues identified as "B" in the briefs submitted by Plumbers Local 690 and Sprinkler Fitter Local 692 and the first and third issues presented by Heat and Frost Workers Local 14. The relevant statutory provisions state,

> No court of this Commonwealth shall have jurisdiction to issue any restraining order or temporary or permanent injunction in a case included within this act, except in strict conformity with the provisions of this act, nor shall any such restraining order or temporary or permanent injunction be issued contrary to the public policy declared in this act. Exclusive jurisdiction and power to hear and determine all actions and suits coming under the provisions of this act, shall be vested in the courts of common pleas of the several counties of this Commonwealth: Provided, however, **That this act shall not apply in any case**—
>
> . . . .
>
> (d) Where in the course of a labor dispute as herein defined, an employe, or employes acting in concert, or a labor organization, or the members, officers, agents, or representatives of a labor organization or anyone acting for such organization, seize, hold, damage, or destroy the plant, equipment, machinery, or other property of the employer with the intention of compelling the employer to accede to any demands, conditions, or terms of employment, or for collective bargaining.

43 P.S. § 206d(d) (emphasis added). Thus, where, during the course of a labor dispute, a labor organization seizes an employer's property with the intention of compelling the employer to accede to its demands, § 206d(d)

permits a trial court to issue an injunction, notwithstanding the Act's restrictions and preclusions.

Accordingly, the threshold issue in this case concerns whether Appellants' activities on July 9, 2014, constituted a seizure for the purpose of § 206d(d). Collectively, Appellants assert that, since Turner failed to demonstrate that any of the organizations or officers seized the CHOP construction site, the Act barred the trial court from issuing the special injunction. Turner counters that it did, in fact, present sufficient evidence for the trial court to find that Appellants seized the CHOP construction site "with the effect and intention of denying Turner, its agents and employees free access to the [s]ite." Turner's brief at 18. For the following reasons, we find that the record sustains the trial court's finding that a seizure occurred.

A trial court's decision that a seizure occurred must be upheld if that decision rests upon reasonable grounds. *Giant Eagle Markets Co. v. United Food & Commercial Workers Union, Local No. 23*, 652 A.2d 1286, 1293 (Pa. 1995) ("The Superior Court improperly reweighed the evidence *de novo* and reversed the trial court's decision."). Pennsylvania law has long held that "[f]orcibly to deny an owner of property or his agents and employees access to that property . . . is in practical and legal effect a seizure or holding of that property."); *Carnegie-Illinois Steel Corporation v. United Steel Workers of America*, 45 A.2d 857, 861 (Pa. 1946)

- 22 -

(finding that a seizure occurred during a labor dispute when picketers severely restricted or interfered with the ingress and egress of the plant's employees or agents). We look first to a well-regarded and oft-cited opinion by our Supreme Court for succinct guidance:

> If the owner be deprived of the use and enjoyment of the property so that it becomes utterly valueless to him it is effectively seized and held whether the force employed for that purpose be exerted within the building or immediately without. The control of the entrances is control of the plant.

*Westinghouse Elec. Corp. v. United Elec., Radio & Mach. Workers of Am. (CIO) Local 601*, 46 A.2d 16, 20 (Pa. 1946). The *Westinghouse* Court notably held that an injunction against protests by union demonstrators was proper when plaintiff Westinghouse "produced convincing evidence of irreparable damage, not because of any destruction of, or injury to, its plants, but because of the interruption of vital activities necessary by way of preparation for future business and production." *Id*. at 21.

This Court and our High Court have consistently recognized that a seizure occurs when demonstrators interfere with the ingress and egress of visitors to the building or site. *See Neshaminy Constructors, Inc. v. Philadelphia, Pa. Bldg. & Const. Trades Council, AFL-CIO*, 449 A.2d 1389 (Pa.Super. 1982); *Wilkes-Barre Independent Co. v. Newspaper Guild Local No. 120,* 314 A.2d 251 (Pa. 1974); *Carnegie-Illinois Steel Corporation*, *supra*. Demonstrators need not become violent or in any way dangerous in such interference; instead, "[w]hether accompanied by

violence or not, picketing which denies access to an employer's plant or property constitutes a seizure thereof and cannot be permitted." ***Neshaminy Contractors, Inc.***, ***supra*** at 424. Further, demonstrators blocking "even one gateway to the plant entitle[s] the plaintiff to the protection of a court of equity just as fully as would the seizure of the entire plant. When a 'picket line' becomes a picket fence it is time for government to act." ***Carnegie-Illinois Steel Corp.***, ***supra*** at 861. Neither this Court nor the Supreme Court of Pennsylvania has imposed evaluative criteria relating to the duration of an apparent seizure.

As our Supreme Court explained in ***Giant Eagle Markets Co.***, ***supra*** at 1292, "mass picketing constitutes a seizure for the purposes of Section 206d when it forcibly denies an owner of property or his agents and employees free access to that property." The High Court further elucidated, "the standard enunciated above . . . focuses on the effect of mass picketing in order to determine whether a seizure has occurred, not whether the picketing was carried out with the express intent of bringing about the seizure." ***Id***. It continued, "isolated instances of the application of force or intimidation do not constitute a seizure. This, however, is due to their sporadic nature rather than to the lack of sanction by the pickets' labor union." ***Id***. The Court clarified, "[h]owever, when pickets begin a consistent pattern of subjecting customers and employees to such acts, a seizure occurs regardless of whether the acts are committed in furtherance of an

express union policy or, indeed, even if they are committed against the orders of the union representatives." *Id*.

Instantly, Turner adduced testimonial, video, and photographic evidence that Appellants, members and officers of associated building trades in the greater Philadelphia area, coordinated a mass demonstration of up to 181 people over a six-hour period on July 9, 2014. N.T., 7/14/14, at 10-11, 26. The respective business managers for Steamfitters Local 420 and Heat and Frost Insulators Local 14 and a member of the Sprinkler Fitters Local 692 executive board were identified among the participants at the rally. *Id*. at 25-28. The demonstrators donned t-shirts emblazoned on the front with the statement "#1 Ranked Hospital, #1 Ranked Building Trades." The back of the t-shirts depicted the word "Turner" behind a circle-backslash—the universal symbol for "no." *Id*. at 12. The marchers formed picket lines in each of the two construction gates, circled within the construction gates, and refused to yield to several vehicles that attempted to gain ingress. *Id*. at 11-13, 18, 21-22. The blockade also prevented tradesmen that were not involved in the labor dispute from getting to the construction site to perform their work. *Id*. at 19. Indeed, only two of the six union contractors that were scheduled to perform at the site had sufficient manpower that morning. *Id*. Additionally, the picketers blocked the delivery of drywall products. *Id*.

Thus, mindful of our Supreme Court's framework concerning when a mass picketing constitutes a seizure for the purposes of § 206d(d), we find

that Turner adduced sufficient evidence to sustain the trial court's determination that the sum of Appellants' activities in blocking the ingress of vehicles, deliveries, and contractors to the construction site for approximately six hours was tantamount to a seizure under the Act. *See Wilkes-Barre Indep. Co.*, *supra* (section 206d(d) applied where large numbers of pickets blocked two of eight entrances for fifteen minutes in the morning and thirty minutes in the evening even though the number of picketers at the two entrances never exceeded six at all other times of day); *Neshaminy Constructors*, *supra* at 1390-91 (seizure occurred within meaning of § 206d(d) where pickets blocked construction entrance designated for use by employees and subcontractors, even though it was one of several entrances to the site); *Philadelphia Minit-Man Car Wash v. Building and Const. Trades Council of Philadelphia and Vicinity, AFL-CIO*, 192 A.2d 378, 380 (Pa. 1963) (allegations of repeated and frequent mass picketing of entrances to job site as to render ingress and egress impossible were "sufficient to bring this controversy within the exclusionary provisions of the Labor Anti-Injunction Act").

The crux of Appellants' contention is that Turner's evidence did not confirm that the vehicles turned away were agents or employees of Turner. Additionally, Plumbers Local 690 and Sprinkler Fitters Local 692 speculate that the drivers of the vehicles blocked by the protesters were union workers who invoked their right to decline to cross the picket line. The latter claim

necessarily ignores the testimony concerning the failed drywall delivery. Moreover, it was within the purview of the trial court to weigh the evidence as it deemed appropriate and either accept or reject Mr. Rickett's testimony. Stated simply, Appellants' challenge to the sufficiency of Appellee's evidence and the veracity of Mr. Rickett's testimony fails. It is beyond peradventure that the trial court is empowered to weigh the evidence and to resolve matters of credibility. This Court will not disturb findings that the certified record supports. **See Giant Eagle**, **supra** at 1293 (admonishing Superior Court for overstepping its standard of review where testimony provided ample evidence for trial court to rely upon in issuing a preliminary injunction). Since the certified record in the present case supports the trial court's determination that the picket lines Appellants formed in the two construction gates constituted a seizure pursuant to § 206d(d), we do not disturb that finding or the attendant conclusion that the Labor Anti-Injunction Act is inapplicable.

The learned dissent accurately notes that the trial court neglected to specifically identify pursuant to § 206d(d) the conditions or demands that Appellants sought to impose upon Turner as a result of the July 9 seizure. However, since Appellants failed to challenge this aspect of the trial court's decision, we do not address it *sua sponte*. In **The York Group, Inc. v. Yorktowne Caskets, Inc.**, 924 A.2d 1234 (Pa.Super. 2007), this Court discussed the effect of an appellant's failure to assert a ground for reversal.

In this connection, we must stress that the appealing party bears the burden of establishing that the trial court's decision is erroneous. **Commonwealth ex rel. Robinson v. Robinson**, 505 Pa. 226, 478 A.2d 800, 804 (1984) (the appellant has the burden to demonstrate the trial court's decree is erroneous due to either the evidence or the law). As a corollary to that precept is the equally important concept that an appellate court cannot reverse a court order on the basis of an issue that has not been raised by the appealing party. **Wiegand v. Wiegand**, 461 Pa. 482, 337 A.2d 256 (1975) (*sua sponte* consideration of issues deprives court of benefit of counsel's advocacy); **Knarr v. Erie Insurance Exchange,** 555 Pa. 211, 723 A.2d 664 (1999) (if appellant fails to present an issue on appeal, Superior Court is not permitted to address it, even if trial court's disposition was fundamentally wrong); **Department of Transportation v. Boros**, 533 Pa. 214, 620 A.2d 1139 (1993) (Commonwealth Court erred in reversing based on issue not raised by appellant); **Phillips Home Furnishings, Inc. v. Continental Bank**, 467 Pa. 43, 354 A.2d 542 (1976) (Superior Court was not permitted to reverse case based on claim not raised by appellant).

**Id**. 1246–47

While we can raise the issue of jurisdiction *sua sponte*, the trial court's § 206d(d) determination did not affect the trial court's jurisdiction to hear the present case. Rather, the trial court's assessment under § 206d(d) simply controlled whether or not the Act's restrictive provisions in § 206i and the heighten standard of proof outlined in § 206h applied. Accordingly, it is improper for this Court to address the non-jurisdictional issue *sua sponte* as a grounds for reversal. **Steiner v. Markel**, 968 A.2d 1253 (Pa. 2009) ("an appellate court cannot reverse a trial court judgment on a basis that was not properly raised and preserved by the parties.").

The second aspect of Appellants' argument is that, despite the trial court's express finding that a seizure occurred under § 206d(d), the trial court actually intended to issue the injunction within the parameters of § 206i of the Act. Section 206i is a restrictive provision of the Act that requires, *inter alia*, that trial courts make specific enumerated factual findings prior to issuing injunctions in labor disputes.[15] Appellants' argument

---

[15] Section 206i (Basis for labor injunctions) provides as follows:

No court of this Commonwealth shall issue any restraining order or a temporary or permanent injunction in any case involving or growing out of a labor dispute, except after hearing the testimony of witnesses in open court (with opportunity for cross-examination) in support of the allegations of a complaint made under oath, and testimony in opposition thereto, if offered, and except after findings of fact by the court to the effect—

(a) That unlawful acts have been threatened and will be committed unless restrained, or have been committed and will be continued unless restrained, but no temporary or permanent injunction or temporary restraining order shall be issued on account of any threat or unlawful act, excepting against the person or persons, association or organization, making the threat or committing the unlawful act, or actually authorizing or ratifying the same after actual knowledge thereof.

(b) That substantial and irreparable injury to complainant's property will follow unless the relief requested is granted.

(c) That, as to each item of relief granted, greater injury will be inflicted upon complainant by the denial of relief than will be inflicted upon defendants by granting of relief.

(d) That no item of relief granted is relief which is prohibited under section six of this act [*i.e.*, 43 P.S. § 206f].

*(Footnote Continued Next Page)*

in favor of the application of § 206i, notwithstanding the trial court's express finding that a seizure occurred pursuant to § 206d(d), is based upon our reasoning in ***Overnight Transportation Co. v. Teamster Local 107***, 779

*(Footnote Continued)* ────────────

> (e) That complainant has no adequate remedy at law; and
>
> (f) That the public officers charged with the duty to protect complainant's property are unable to furnish adequate protection.
>
> Such hearing shall be held only after a verified bill of complaint and a verified bill of particulars specifying in detail the time, place, and the nature of the acts complained of, and the names of the persons alleged to have committed the same or participated therein, have been served, and after due and personal notice thereof has been given, in such manner as the court shall direct, to all known persons against whom relief is sought, and also to the chief of those public officials of the county and city, within which the unlawful acts have been threatened or committed, charged with the duty to protect complainant's property. The hearing shall consist of the taking of testimony in open court with opportunity for cross-examination and testimony in opposition thereto, if offered, and no affidavits shall be received in support of any of the allegations of the complaint.

43 P.S. § 206i (footnote omitted).

Our case law provides that, absent the factual findings required by § 206i(a)-(f), trial courts lack both authority and jurisdiction to issue an injunction. ***See DeWilde v. Scranton Bldg. Trades and Const. Council***, 22 A.2d 897 (Pa. 1941) (absent findings which Act makes prerequisite to issuance of injunction, trial court lacked power or jurisdiction to issue injunction);***Weis Markets, Inc. v. United Food & Commercial Workers Union***, 632 A.2d 890 (Pa.Super. 1993) ("the Act precludes the issuance of a preliminary injunction . . . absent the previously mentioned hearing in open court and the issuance of findings-of-fact as to specific matters [enumerated in § 206i]").

A.2d 533 (Pa.Super. 2001), *rev'd sub nom*. **Overnight Transportation Co. v. Local 107**, 786 A.2d 173 (Pa. 2001), a ruling that our Supreme Court reversed due to this Court's lack of jurisdiction over the untimely appeal.

Specifically, Appellants rely upon our statements in **Overnight Transportation Co.** that, "without a specific finding at the time of the issuance of the injunction that the injunction was being issued pursuant to 43 P.S. § 206d, that section does not apply [and] without the exemption from the Act present in § 206d, it is clear that the other provisions of the Act apply in this case." **Id**. at 538. In reaching this determination, we observed both that the injunction in that case did not specifically state that the relief was being issued pursuant to 206d and that the "trial court's determinations track the considerations set forth in § 206i[.]" Thus, due to the absence of a specific finding in the injunction order that § 206d applied, we treated the injunction as having been authorized under § 206i.

Appellants argue that we are required to treat the July 2014 preliminary injunction as being issued under the Labor Anti-Injunction Act even though the trial court held an evidentiary hearing and made a specific finding in its written opinion that a seizure occurred under § 206d. Appellants point to the similarities between the injunction orders in **Overnight Transportation** and the present case insofar as the trial court's preliminary injunction in the case at bar did not refer to § 206d specifically

and listed the factors enumerated in § 206i, albeit without any reference to the Act.

For two reasons, we reject Appellants' argument in favor of utilizing **_Overnight Transportation_** in order to construe the July injunction as being issued pursuant to the Labor Anti-Injunction Act. First, since our Supreme Court reversed our decision in **_Overnight Transportation_** due to a lack of jurisdiction to address the precise issues that we purported to confront, we are not bound by the holdings espoused therein. Our High Court's reversal for lack of jurisdiction rendered our decision in **_Overnight Transportation_** a legal nullity. **_See In re Patterson's Estate_**, 19 A.2d 165, 166 (Pa. 1941) (reiterating, "An adjudication of a court without jurisdiction is 'void and of no legal effect.'"); **_McCutcheon v. Philadelphia Elec. Co._**, 788 A.2d 345, 346 (Pa. 2002) (absent a final order, "the Superior Court did not have appellate jurisdiction pursuant to 42 Pa.C.S. § 742, and the order it issued is void."). Thus, this Court's discussion in **_Overnight Transportation_** has no legal effect. At most, the discussion in that case provides insight into how that particular three-judge panel perceived the matter before it.

Second, and more importantly, we are unconvinced that the rationale this Court expressed in **_Overnight Transportation_** is appropriate herein. The record confirms that the party seeking injunctive relief, Turner, unquestionably invoked § 206d at the inception of the proceedings, it presented evidence to establish a seizure during the ensuing evidentiary

hearing, and the trial court made a specific finding in its Rule 1925(a) opinion that a seizure, in fact, occurred.

The April 2014 petition for a special injunction explicitly invoked § 206d as a basis to avoid the Act's prohibition on restraining orders and injunctions in labor disputes. Significantly, that petition and the supporting memoranda unmistakably asserted that aspects of the labor demonstration at the CHOP construction site were tantamount to a seizure. *See* Memorandum in Support of Petition for a Special Injunction and Preliminary Injunction, 3/21/14, at 4-5. The ensuing special injunction order did not refer to any factors that could be confused with § 206i.

Thereafter, following additional unrest at the CHOP construction site, Turner filed a second petition for special injunction and an amended complaint in equity joining the remaining defendants. Again, Turner unambiguously invoked § 206d as its basis to avoid application of the Act. To support its request for relief, Turner submitted Mr. Ricketts's affidavit and photographic evidence of the impediments to ingress and egress. Likewise, the amended complaint specifically averred that Appellants' collective picketing activities blocked the egress and ingress of Turner's "employees, subcontractors, vendors . . . and equipment[.]" Amended Verified Complaint in Equity, 7/25/14, at 6. During the ensuing evidentiary hearing, Turner adduced forty-five pages of testimony regarding the size, scope, and effect of Appellants' activities at the CHOP construction site on July 9, 2014, and

introduced additional photographic and video exhibits that showed picketers refusing to yield to vehicles attempting to enter through at least one of the construction gates.

In contrast to the state of the record in **Overnight Transportation**, our review of the instant case is not reduced to the singular attempt to reconcile a perceived conflict between an order and an ensuing trial court opinion. Herein, we have the benefit of a complete certified record that confirms that the issue regarding the applicability of § 206d was at the heart of this case from its inception. While we cannot purport to explain why the July 2014 preliminary injunction listed, without citation, considerations enumerated in § 206i, unlike the Court in **Overnight Transportation**, we do not rely upon that single fact as a basis to ignore the trial court's explicit finding that a seizure occurred pursuant to § 206d. Thus, despite Appellants' protestations to the contrary, we find that the trial court did not err in issuing the preliminary injunction outside of the exacting parameters of § 206i.[16]

_____

[16] The Labor Anti-Injunction Act does not mandate that injunctions and restraining orders refer to § 206d specifically when applying the statutory exception under that section and, for what it is worth, our rationale in **Overnight Transportation** failed to identify any benefit that would inure to either party as a result of requiring an explicit reference to that section in the injunction. We simply invoked the legislature's statement of public policy, which at most can be construed as implying that the § 206d(d) exception should be strictly construed. Instantly, however, our legislature's
*(Footnote Continued Next Page)*

Having determined that the trial court ruled in accordance with § 206d of the Act, we now address whether the certified record supports the trial court's decision to issue the preliminary injunction. In doing so, we are reminded that the review of a trial court's decision to grant or deny preliminary injunctive relief is "highly deferential." **Synthes USA Sales, LLC v. Harrison**, 83 A.3d 242, 248-49 (Pa.Super. 2013). "[I]n reviewing the grant or denial of a preliminary injunction, an appellate court is directed to examine the record to determine if there were any apparently reasonable grounds for the action of the court below." **Id**. "It is well established that the standard of review for granting or denying a preliminary injunction requires an appellate court only to determine if there were any apparently reasonable grounds for the lower court's action." **Giant Eagle Markets Co.**, **supra** at 1291-92 (citing **Valley Forge Historical Society v. Washington Memorial Chapel**, 426 A.2d 1123, 1128 (Pa. 1981)). Examination of the record below contains sufficient evidence that the trial court had apparently reasonable grounds to issue the July 18, 2014 special injunction. Accordingly, for the reasons discussed *infra*, the trial court's order in this regard must be affirmed.

_(Footnote Continued)_ ─────────────

stated policy preferences do not obscure the reality that the facts and procedural history of the instant case fall squarely within the purview of § 206d(d).

Since the restrictive terms of the Labor Anti-Injunction Act did not apply in this case, the trial court issued the preliminary injunction in accordance with the traditional rules of equity. *Wilkes-Barre Independent Co.*, *supra* at 253-254. In *Synthes USA Sales*, *supra* at 249, we reiterated the six traditional factors that a petitioner must establish in order to obtain an injunction,

> 1) that the injunction is necessary to prevent immediate and irreparable harm that cannot be adequately compensated by damages; 2) that greater injury would result from refusing an injunction than from granting it, and, concomitantly, that issuance of an injunction will not substantially harm other interested parties in the proceedings; 3) that a preliminary injunction will properly restore the parties to their status as it existed immediately prior to the alleged wrongful conduct; 4) that the activity it seeks to restrain is actionable, that its right to relief is clear, and that the wrong is manifest, or, in other words, must show that it is likely to prevail on the merits; 5) that the injunction it seeks is reasonably suited to abate the offending activity; and, 6) that a preliminary injunction will not adversely affect the public interest. . . .

Unlike § 206i, the traditional rules do not require the trial court to present a factual finding as a prerequisite to issuing a preliminary injunction. In fact, rather than require a contemporaneous recitation of the court's findings, Pa.R.C.P. 1531, relating to preliminary or special injunctions, mandates that trial courts enter a written memorandum after issuing the final order in order to ensure an appropriate record on appeal.

Instantly, the trial court entered a written opinion that applied the appropriate factors and found that Turner satisfied its burden of proof.

Succinctly, the court found that: (1) Turner would suffer irreparable harm that could not be adequately compensated by money damages if Appellants were permitted to continue to block the entrances to the CHOP construction site; (2) the seizure impacted Turner's financial productivity, which could have continued unabated if the injunction was not issued and, concomitantly, while the injunction prohibited Appellants from continuing to block the construction entrances, it permitted the labor organizations to picket near the construction site; (3) the desired scenario where Appellants voiced their labor concerns without unlawfully interfering with the construction of the medical facility restored the parties to their status as it existed immediately prior to the seizures; (4) Appellants' conduct was actionable insofar as seizures of property are wrongful and actionable under Pennsylvania law; (5) the injunction is reasonably related to preventing the further obstruction of the gates at the CHOP construction site; and (6) while Appellants' blockade interfered with the construction of the health care facility, requiring Appellants to picket twenty-five feet away from the construction entrances does not adversely affect the public interest in supporting workers' rights. *See* Trial Court Opinion, 10/9/14, at 11-12. As Appellants do not challenge the trial court's consideration of any of the enumerated factors that our case law deems essential to the entry of an injunction or any comparable elements under § 206i, we do not review it. Indeed, as we observed, *supra*, absent an assertion of error, it is improper

to address an issue *sua sponte*. **See Steiner**, **supra**; **The York Group, supra**.

Next, we address Appellants' respective assertions that the preliminary injunction was impermissibly overbroad. The issue is identified by Plumbers Local 690 and Sprinkler Fitters Local 692 as "C" and by Heat and Frost Insulators Local 14 as "Two." Initially, we observe that the argument leveled by Heat and Frost Insulators Local 14 relies entirely upon § 206f of the Labor Anti-Injunction Act. Likewise, Plumbers Local 690 and Sprinkler Fitters Local 692 invoke this section as alternative bases for finding the preliminary injunction overbroad. In brief, § 206f limits the scope of a trial court's authority to issue injunctive relief and provides a litany of acts that the court is prohibited from enjoining under the Act.[17] As we discussed at

_____

[17] Section 206f identifies fifteen specific actions that a trial court lacks authority to prohibit during labor disputes. Those restrictions are as follows:

> No court of this Commonwealth shall have jurisdiction or power in any case involving or growing out of a labor dispute to issue any restraining order or temporary or permanent injunction which, in specific or general terms, restrains or prohibits any person, association or corporation from doing, whether singly or in concert with others, notwithstanding any promise, undertaking, contract or agreement to the contrary, any of the following acts:
>
> (a) Ceasing or refusing to perform any work or to remain in any relation of employment.

*(Footnote Continued Next Page)*

*(Footnote Continued)* ———————————

(b) Becoming or remaining a member of any labor organization or of any employer organization.

(c) Paying or giving to, or withholding from, any person any strike or unemployment benefits, or unemployment insurance, or other moneys or things of value.

(d) By all lawful means aiding any person who is being proceeded against in, or is prosecuting [FN1] any action or suit involving, or arising out of, a labor dispute in any court of the United States, or of this Commonwealth, or of any state.

(e) Giving publicity to, and obtaining or communicating information regarding the existence of, or the facts or merits involved in, any labor dispute, whether by advertising, speaking or picketing or patrolling any public street or place where any person or persons may lawfully be, or by any other method not involving misrepresentation, fraud, duress, violence, breach of the peace or threat thereof.

(f) Organizing themselves, forming, joining or assisting in labor organizations bargaining collectively with an employer by representatives freely chosen and controlled by themselves, or for the purpose of collective bargaining or other mutual aid or protection, or engaging in any concerted activities.

(g) Persuading by any lawful means other persons to cease patronizing or contracting with or employing or leaving the employ of any person or persons.

(h) Ceasing or refusing to work with any person or group of persons.

(i) Ceasing or refusing to work on any goods, materials, machines or other commodities.

(j) Assembling peaceably to do, or to organize to do, any of the acts heretofore specified, or to promote their lawful interests.

*(Footnote Continued Next Page)*

length *supra*, however, since the certified record supports the trial court's finding that a seizure occurred in this case pursuant to § 206d(d), the remaining requirements and prohibitions imposed by the Act simply do not apply. *See* 43 P.S. § 206d(d) ("this act **shall not apply** in any case-- . . . Where in the course of a labor dispute as herein defined, . . . a labor organization or anyone acting for such organization, seize . . . [the] property of the employer with the intention of compelling the employer to accede to any demands, conditions, or terms of employment, or for collective bargaining.") (emphasis added); ***Westinghouse Elec. Corp. v. International Union of Elec., Radio and Mach. Workers, AFL-CIO-CLC***, 396 A.2d 772 (Pa. Super. 1978) (declining to award fees because, following

*(Footnote Continued)* ─────────────

> (k) Advising or notifying any person or persons of an intention to do or not to do any of the acts heretofore specified.
>
> (l) Agreeing with other persons to do or not to do any of the acts heretofore specified.
>
> (m) Advising, urging or otherwise causing or inducing, without misrepresentation, fraud or violence, others to do or not to do the acts heretofore specified; and
>
> (n) Doing in concert with others any or all of the acts heretofore specified: Provided, That the specific enumeration in this section of acts which may not be restrained or enjoined shall not be construed to authorize the injunction or restraint of any act or acts not heretofore enjoinable or restrainable.

43 P.S. § 206f.

determination that seizure occurred, no part of Labor Anti-Injunction Act is applicable); **Wilkes-Barre Independent Co.**, **supra** at 254 ("since the Anti-Labor Injunction Act did not apply, appellees were not entitled to costs and expenses or counsel fees."). Thus, Appellants' invocation of § 206f is misplaced.[18]

Plumbers Local 690 and Sprinkler Fitters Local 692 assert that the preliminary injunction is overbroad insofar as it was not "couched in the narrowest terms that will accomplish the pin-pointed objectives permitted by constitutional mandate and the essential needs of public order." **See** Plumbers Local 690's brief at 12 (citing **Altemose Construction Co. v. Bldg. & Const. Trades Council of Philadelphia**, 296 A.2d 504, 506 (Pa. 1972) (plurality)); Sprinkler Fitter Local 692's brief at 12 (same). The crux of this argument is that the trial court's prohibition on picketing within the twenty-five foot zones surrounding the construction gates was not tailored to the needs of the case. The unions' shared position has three facets: (1) the injunction prohibits all labor organizations from picketing in the prohibited areas; (2) the restrictions impede the unions' rights to place an observer at Gate B, the neutral gate, to monitor whether it is being operated correctly;

_____

[18] For identical reasons, we reject: (1) the references by Plumbers Local 690 and Sprinkler Fitters Local 692 to § 206h relating to liability of union officers; and (2) Heat and Frost Insulators Local 14's invocation of § 206q concerning the imposition of attorneys' fees.

and (3) the injunction limits the unions involved in the July 2014 rally to a total of five picketers in the non-restricted areas twenty-five feet away from the both gates.[19]  In sum, the unions opine, "the Order effectively eliminates the labor organization[s'] First Amendment right[s] to engage in lawful picketing.  Under these circumstances, the Preliminary Injunction does more than accomplish the pin-pointed objective permitted by constitutional mandate and the essential needs of public order."  **See** Plumbers Local 690's brief at 12 (quotations omitted); Sprinkler Fitter Local 692's brief at 13 (same).  For the following reasons, we agree with the shared assertion of Plumbers Local 690 and Sprinkler Fitters Local 692 that the injunction exceeded what was needed to protect against Appellants' seizure of the construction site during future labor rallies.

As the United States Supreme Court observed in **Carroll v. President and Commissioners of Princess Anne**, 393 U.S. 175, 183 (1968), and our High Court reiterated in **Altemose**, **supra**,[20] "An order issued in the

---

[19] Since Appellants do not challenge the reasonableness of the trial court's imposition of an eight-foot barrier between picketers and the CHOP property along North Gulph Road, we do not address that aspect of the injunction *sua sponte*.

[20] In **Altemose Construction Co. v. Bldg. & Const. Trades Council of Philadelphia**, 296 A.2d 504 (Pa. 1972) (plurality with six participating justices agreeing as to overbreadth of a preliminary injunction's distance restrictions), the Supreme Court unanimously held that the preliminary injunction barring picketing within one mile of a construction site was too broad, but the Court was equally divided as to the nature and extent of the

*(Footnote Continued Next Page)*

area of First Amendment rights must be couched in the narrowest terms that will accomplish the pin-pointed objective permitted by constitutional mandate and the essential needs of the public order." It continued by noting that an injunction that restrains free speech "must be tailored as precisely as possible to the exact needs of the case." *Id*. at 184.

The trial court's opinion did not confront the precise argument that the Plumbers and Sprinkler Fitters level on appeal. Nevertheless, in addressing the aforementioned traditional factors essential to issuing injunctive relief, the trial court determined that the injunction was reasonably tailored to abate Appellants' offending conduct, *i.e.*, the use of picket lines to obstruct the ingress and egress of vehicles at the construction site. The court stressed that the limitations on the number of participants permitted to engage in picketing at the CHOP construction site and the prohibition of pickets within twenty-five feet of the construction gates was fashioned to halt Appellants' illegal seizure of the construction site. *See* Trial Court Opinion, 10/9/14, at 12.

_____
*(Footnote Continued)*

required modification. Justice Pomeroy authored the opinion in favor of affirming the decree with a modification that reduced the distance restriction from one mile to 200 yards. Justice Roberts authored an opinion supporting an exclusion of all distance restrictions in that case. Significantly, both of the learned justices' opinions invoked the principles the United States Supreme Court outlined in *Carroll v. President and Commissioners*, 393 U.S. 175 (1968).

The propriety of an injunction depends upon the nature of the evidence concerning misconduct, the terms of the order, and the type of conduct being enjoined. Whether an injunction is appropriate in any given case is extremely fact-sensitive. *See Altemose Construction*, *supra*.

The record reveals that the preliminary injunction is warranted in this case to counter the unions' repeated utilization of picket lines to block the gates at the construction site. The special injunction entered during April 2014 permitted Plumbers Local 690 to utilize five pickets at the construction gate so long as they did not obstruct traffic and the remaining demonstrators stood at least twenty-five feet away from the entrances. However, that injunction was utterly ineffectual. Accordingly, the trial court entered a subsequent injunction during July 2014 that included the additional defendants, removed the provision that permitted limited picketing at the construction gates, and made clear that "Pickets . . . shall be limited to no more than five (5) in total for, all labor organizations, at any one time at the Construction Site[.]" Preliminary Injunction, 7/18/14, at 3-4.

Our examination of the July 2014 preliminary injunction focuses upon the location and number of pickets permitted at the construction site. First, as it relates to the distance restriction, we observe that the injunction does not enjoin Appellants from engaging in peaceful and lawful picketing near the construction site or forbid all picketing near the premises. The exclusion

of picketers within twenty-five feet of the construction gates was established in the April 2014 injunction and that requirement is not so onerous as to divest Appellants of their right to assemble in order to raise public awareness of Plumber Local 690's ongoing quarrel with Turner.

The injunction restrains Appellants from assembling in certain areas near the construction gates, which picketers blocked during prior rallies. Contrary to the plumbers' and sprinkler fitters' assertions, the injunction does not bar any union representatives from being at the gates for a lawful purpose unrelated to the labor dispute, such as monitoring gate procedures. Furthermore, Appellants are permitted to assemble along North Gulph Road so long as the picketers are twenty-five feet before or beyond either gate and/or across the roadway directly opposite either of the gates. If Appellants picket in those areas, their protests will be visible to all vehicles entering and leaving the site and to traffic traveling in both directions along North Gulph Road. Moreover, they remain free to disseminate information at each of those locations, including the intersection opposite Gate A, concerning the facts of the labor dispute between Plumbers Local 690 and Turner. Accordingly, we reject the assertion that this aspect of the preliminary injunction silenced Appellants' voices or eliminated their right to engage in lawful picketing. Mindful that Appellants previously abused their rights to assemble by unlawfully blocking ingress to the construction site, we find that the distance restrictions outlined in the July 2014 injunction are

narrowly tailored to abate the repeated blocking at the construction gates of vehicles trying to access the site.

While we uphold the trial court's distance restrictions, for the following reasons, we find that the trial court's decision to limit the total number of picketers at the construction site to five at any given time is not tailored to the specific facts of this case. Instantly, Appellants desire to inform the public of their ongoing dissatisfaction with Turner's decision to contract with a non-union subcontractor and to persuade union tradesmen employed at the construction site to stop work in the interest of solidarity. As noted *supra*, an order restricting first amendment freedoms must be couched in terms that achieve a pinpoint objective and are tailored to the needs of the case.

Again, the trial court's objective was to preclude picketers from continuing to block access to the construction gates. However, the restraints that the trial court placed on Appellants' freedom of speech were required to be sufficiently lenient to permit Appellants to continue to communicate with the public and potential sympathizers. While the court's limit of five picketers at any given time provided an effective mechanism for the trial court to ensure that the illegal conduct would cease, the court's solution is not the narrowest means of accomplishing the court's objective. To the contrary, the measure the trial court selected is overly restrictive.

As Appellants' argument highlights, the preliminary injunction permits each of the four labor unions that remain parties to this appeal to have 1.25 picketers at the construction site at any given time. Superimposed on the foregoing distance restrictions that we uphold as reasonable, the five-picket-limit in effect allows Appellants to place no closer than twenty-five feet from each of the two construction gates two picketers at one gate and three at the other. That allotment does not enable Appellants to distribute handbills or engage in the acceptable demonstration tactics that we outlined in the preceding discussion. Although we recognize the trial court's concern over Appellants' willful violations of the special injunction, the instant restriction on the number of picketers inhibits the labor protest in a manner that impedes Appellants' freedom of speech.

Additionally, unlike the obvious utility of the court's distance restrictions, it is not apparent from the certified record how limiting the total number of picketers to five beyond the two twenty-five feet boundaries accomplishes the pinpoint objective of clearing the gates from demonstrators. Thus, we conclude that this aspect of the injunction is not tailored directly to the needs of the instant case, and we find that the court's limit of five picketers at any given time was unreasonable. Accordingly, we remand this matter for the trial court to fashion a limitation that achieves the specific needs of this case, *i.e.*, a number that is sufficient to prevent Appellants from blocking access to the construction site yet continues to

honor Appellants' rights to convey their dissatisfaction with Turner. **See, e.g.**, **Altemose Construction**, **supra** at 506 (opinion in support of modification without distance restrictions) (Roberts, J., proposed injunction would achieve exact needs of case because it permitted picketing at construction site, rather than 600 feet away, but limited number of pickets to no more than ten at any one time); **id**. at 515 (Pomeroy, J., favoring injunction that reduced the distance restriction from one mile to 200 yards.); **Carnegie-Illinois Steel Corp. v. United Steelworkers of America**, 45 A.2d 857, 861-64 (Pa. 1946) (noting approval of temporary injunction that limited number of pickets at each factory gate to ten); **International Molders etc. Union v. Superior Court**, 138 Cal. Rptr. 794 (Cal. App. 1977) (affirming restraining order that limited two pickets within 20 feet of plant entrance but permitted unlimited demonstrators beyond 20-foot perimeter); **Binder Plumbing & Heating, Inc. v. Plumbers & Pipefitters Local Union No. 99**, 625 N.E.2d 934 (Ill. App. 1993) (upholding injunction permitting three pickets at construction site and restricting activities that interfered with ingress and egress to site).

For all of the foregoing reasons, we affirm the imposition of the July 18, 2014 preliminary injunction as to all Appellants but reverse and remand the matter for the court to modify the injunction consistent with this writing.

Order affirmed in part, reversed in part, and remanded for further proceedings.

Judge Lazarus joins this Opinion.

Judge Donohue files a Dissenting Opinion.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/14/2015